[No. S022196. June 22, 1992.]

In re JOHN P. ALVERNAZ on Habeas Corpus.

## COUNSEL

Cleary & Sevilla and Charles M. Sevilla for Petitioner.

Gary M. Mandinach as Amicus Curiae on behalf of Petitioner.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Wiiliamson, Chief Assistant Attorneys General, Harley D. Mayfield and Gary W. Schons, Assistant Attorneys General, Jeffrey J. Koch, Janelle B. Davis and John T. Swan, Deputy Attorneys General, for Respondent.

Joseph A. Burns as Amicus Curiae on behalf of Respondent.

## OPINION

**GEORGE, J.**—In this case we must decide under what circumstances, if any, a criminal defendant who rejects an offered plea bargain prior to trial and thereafter is convicted and receives a sentence less favorable than the terms of the offer, may challenge that conviction and sentence on the ground of ineffective assistance of counsel in the decision to reject the offered plea bargain.

As we shall explain, we conclude, in conformity with the decisions of the federal and state courts that have addressed the issue, that when a defendant demonstrates that ineffective representation at the pretrial stage of a criminal proceeding caused him or her to proceed to trial rather than to accept an offer of a plea bargain that would have been approved by the court, the defendant has been deprived of the effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution and article I, section 15 of the California Constitution, even if the defendant thereafter receives a fair trial. We also conclude that when a defendant has established that such a constitutional violation has occurred, the appropriate remedy is either modification of the judgment consistent with the terms of the offered plea bargain, or a new trial with resumption of the plea negotiation process.

In the present case, however, we conclude, on the basis of the record before us, that petitioner John P. Alvernaz has failed to sustain his burden of establishing that he would have accepted the offered plea bargain, had he received constitutionally adequate assistance from counsel.[1] Accordingly, we affirm the judgment of the Court of Appeal denying the petition for writ of habeas corpus.

## I

On May 8, 1987, a five-count information was filed against petitioner alleging offenses committed against three Mexican farm workers. The information charged petitioner with one count of first degree robbery (Pen. Code, §§ 211, 212.5, subd. (a)),[2] two counts of second degree robbery (§§ 211, 212.5, subd. (b)), one count of first degree burglary (§ 459), and one count of kidnapping for the purpose of robbery (§ 209, subd. (b)), with allegations that he personally had used a firearm during the commission of the robberies and the kidnapping (§ 12022.5) and had suffered a prior conviction for receiving stolen property (§ 496, subd. (1)). Following a jury trial in San Diego County Superior Court, petitioner was convicted of all but the burglary charge, and the enhancement allegations were found true. The trial court imposed concurrent sentences, including life imprisonment with the possibility of parole for the offense of kidnapping for the purpose of robbery, plus two years for the firearm-use enhancement. Petitioner alleges that according to his calculations, he faces, under his life sentence, prison confinement for 16 years and 7½ months prior to being paroled.[3]

On appeal, the Court of Appeal affirmed the judgment. We denied review.

---

[1] As we shall explain, petitioner also was required to establish the probability that the offered plea bargain would have been approved by the trial court. For the reasons set forth *post*, we need not and do not determine whether petitioner sustained his burden of proof on this issue.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] Under section 3046, a prisoner imprisoned under a life sentence may not be paroled "until he or she has served at least seven calendar years or has served a term as established pursuant to any other section of law that establishes a minimum period of confinement under a life sentence before eligibility for parole, whichever is greater. . . ." Under regulations promulgated by the Board of Prison Terms pursuant to section 5076.2, the date of defendant's parole is governed by title 15 of the California Code of Regulations, section 2280 et seq., relating to "Parole Consideration and Criteria and Guidelines for Life Prisoners."

In the petition for writ of habeas corpus, petitioner's counsel estimates that under these regulations petitioner faces prison confinement for 16 years and 7½ months prior to being paroled.

In his return, the Attorney General disputes that the regulations *mandate* service of any such term of prison confinement, noting that the regulations vest discretion in the Board of Prison Terms in determining whether a defendant is suitable for parole, in setting the base term and enhancements, and in fixing the parole date. The Attorney General does not dispute, however, that under the regulations, petitioner faces the possibility he will serve 16 years and 7½ months of prison confinement under his life sentence. For the purpose of our determination of

Petitioner then petitioned the superior court for a writ of habeas corpus, asserting that in making his decision prior to trial to reject a plea bargain offered by the prosecution, involving a substantially lesser sentence, he had been denied his right to the effective assistance of counsel. In support of his petition, petitioner declared that he would have accepted the offered plea bargain, had he been competently counseled. The superior court issued an order to show cause and, after considering the petition, the return, and the "denial" (including two declarations of petitioner and one of his former counsel), denied the relief sought (reversal of the judgment and reinstatement of the offer). The court determined that although petitioner had been misadvised by his counsel regarding the maximum sentence he faced in the event he failed to accept the offered plea bargain, petitioner had not met his burden of establishing he would have accepted the offer had he been competently advised.

Petitioner renewed his petition for writ of habeas corpus in the Court of Appeal, offering in support of his petition several declarations from petitioner, his family members, his former counsel, and other criminal defense attorneys. In one of his supporting declarations, petitioner set forth the relevant facts as follows: At the conclusion of the preliminary hearing in this case, the magistrate allegedly stated that he "had serious reservations about the prosecution's proof" but that he believed the prosecutor had shown enough to hold petitioner to answer. Before the case proceeded to trial, a plea bargaining session took place. Petitioner "was given to understand" by his counsel that the prosecution had offered to permit petitioner to plead guilty to one count of robbery with a four- or five-year maximum sentence, which would amount to a "net sentence" (actual prison confinement) of two to two and one-half years, after deduction of worktime credits. In a discussion between petitioner, petitioner's father, and defense counsel, petitioner inquired of his attorney whether petitioner should accept the offered plea bargain. The attorney said that "if he didn't think he could win, he would advise [petitioner] like a great Irish uncle to take the plea bargain." Petitioner then asked his father what he thought petitioner should do. His father told him he should follow his lawyer's advice.[4]

Petitioner declared that when he questioned his counsel about the consequences of not prevailing at trial, counsel told him the maximum penalty would be approximately eight years in prison and, with deduction of worktime credits, a "net" sentence of approximately four years. Petitioner declared that he was encouraged by his counsel's prediction of "a 70-80%

petitioner's claims in this habeas corpus proceeding, we need not and therefore do not undertake independently to determine the term of prison confinement petitioner likely will serve under his life sentence.

[4]Although petitioner's declaration did not expressly state that his trial counsel had advised him to reject the offered plea bargain, petitioner's declaration implies this was what transpired.

chance of winning the case should [he] go to trial," but that had he known that by losing the case he would be subject to a life sentence with actual prison confinement in excess of 16 years, he would have attempted to negotiate a no-contest plea in response to the prosecutor's 1-count offer.

In a supplemental declaration (made five months after his initial declaration), petitioner represented that had he known he faced prison confinement in excess of sixteen years, he would have accepted the plea offer. He also declared the reason he hired his counsel was that petitioner had grown up with counsel's sons and knew him. Petitioner allegedly was completely dependent upon his counsel for professional advice throughout the proceeding.

In another declaration filed in support of the petition, petitioner's trial counsel, Richard Milloy, stated that prior to trial, the prosecution had offered to dismiss the remaining counts upon petitioner's pleading guilty to one count of robbery and admitting a firearm-use enhancement. Milloy advised petitioner of the offer, further informing him that although the disposition of the case offered by the prosecutor could result in a midterm sentence of three years on the robbery count plus two years for the enhancement, the court would not necessarily impose a midterm sentence.

Milloy further declared: "Mr. [Alvernaz] adamantly maintained that he was innocent of the charges and refused to accept the plea bargain offer as set forth by the People. [¶] It is my normal procedure to inform a defendant of the potential sentence in the event of conviction, however, it should be noted that I do not recall informing Mr. [Alvernaz] of the consequences of a sentence under Penal Code § 209. Mr. [Alvernaz] was informed that a conviction could lead to a life top sentence, and that a life top sentence translated to terms of actual time of approximately seven (7) years. I cannot, at this time, recall informing Mr. [Alvernaz] that Penal Code § 209 could bring about a confinement of 16 to 17 years and that he would not be in front of a Parole Board until at least seven years of his sentence had been completed."

Milloy finally declared that in the course of representing petitioner in the present case, he met with him on more than 12 occasions in preparation for trial. Milloy conducted a thorough investigation of the facts and spoke with various witnesses who would be appearing on petitioner's behalf. Milloy declared: "The case involved a rather complex set of defense issues but more importantly, Mr. [Alvernaz's] adamant position pursuant to his innocence in the matter, perhaps led me to overlook a proper charge with respect to informing Mr. [Alvernaz] of the potential consequences of a sentence should he be convicted on all counts."

The declarations of several criminal defense attorneys practicing in San Diego County represented that they could not recall any occasion in which either the district attorney or the trial court had rejected a plea bargain simply because it was proffered under *People v. West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409] (a plea of nolo contendere, not admitting a factual basis for the plea).

After considering the foregoing declarations, the Court of Appeal issued an order to show cause. The Attorney General, in support of his return, submitted the identical declarations of petitioner, petitioner's father and other family members, and defense counsel Richard Milloy, which had been filed in support of the petition. The Attorney General argued the declarations failed to establish that petitioner would have accepted the offered plea bargain even had his counsel given him accurate advice. The Attorney General further observed that the plea bargain offered petitioner would have been subject to the restrictions on plea bargaining set forth in section 1192.7, which, among other things and subject to specified exceptions, prohibits plea bargaining in any case in which the defendant is charged with a "serious felony" (a category defined by that statute to include each of the five offenses with which petitioner was charged). The Attorney General maintained there had been no showing that petitioner's case fell within any of the exceptions stated in section 1192.7; accordingly, the plea bargain in question would have been "illegal" and could not and would not have been accepted by the trial court.

In his "denial" to the return, petitioner incorporated by reference the allegations set forth in his petition. He further argued that the plea bargain offered was not illegal because the prosecution, by virtue of having made the offer, necessarily had determined the case fell within one of the three exceptions to the prohibition on plea bargaining contained in section 1192.7.

The Court of Appeal denied the petition. The court's opinion, signed by two justices, determined that petitioner had met his burden of establishing (1) he was not competently counseled as to the consequences of rejecting the offered plea bargain, and (2) the likelihood he would have accepted the offer, had he received competent advice. The court relied on "petitioner's own affidavits, lacking any contrary evidence, [which] establish that had he known the true gamble he would have accepted the bargain." The court, taking judicial notice of the superior court's well-known practice of accepting reasonable plea bargains, also concluded that the plea bargain in all likelihood would have been accepted by the trial court.

The appellate court further concluded, however, that because petitioner had received a fair trial, he had not as a matter of law been prejudiced by his

counsel's incompetence, and reversal therefore was not required. The court reasoned that the purpose of the constitutional guarantee of effective assistance of counsel is to preserve basic trial rights; by electing to proceed to trial and receiving the benefit of a fair trial, petitioner was not denied any rights to which he was constitutionally entitled. For these reasons, the court denied the petition.

In an opinion which concurred in the result only, the third justice concluded petitioner had failed to meet his burden of establishing the reasonable probability that, with competent advice, he would have accepted the prosecution's offer and the trial court would have approved the proffered plea bargain.

II

"Whatever might be the situation in an ideal world," plea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. (*Blackledge* v. *Allison* (1977) 431 U.S. 63, 71 [52 L.Ed.2d 136, 145, 97 S.Ct. 1621]; see *Santobello* v. *New York* (1971) 404 U.S. 257, 260-261 [30 L.Ed.2d 427, 432-433, 92 S.Ct. 495]; *People* v. *West, supra,* 3 Cal.3d at pp. 604-605.) Commentators have estimated that in most jurisdictions, between 80 and 90 percent of criminal cases are disposed of by guilty pleas (Bond, Plea Bargaining & Guilty Pleas (1983) § 1.2, at pp. 1-2 to 1-3), which, in the majority of cases, are the product of plea bargains. (*Id.,* § 2.8, pp. 2-23 to 2-24.) Thus, most criminal defendants are faced with the crucial decision whether to plead guilty pursuant to a plea bargain or instead proceed to trial. Although this decision ultimately is one made by the defendant, it is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea bargain. The defendant can be expected to rely on counsel's independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of trial. (See *People* v. *Stanworth* (1974) 11 Cal.3d 588, 611-612 [114 Cal.Rptr. 250, 522 P.2d 1058]; *In re Williams* (1969) 1 Cal.3d 168, 174-175 [81 Cal.Rptr. 784, 460 P.2d 984]; *People* v. *Brown* (1986) 177 Cal.App.3d 537, 544-545 [223 Cal.Rptr. 66]; 1 Amsterdam (1984) Trial Manual for the Defense of Criminal Cases, § 201, p. 1-229.)

The pleading—and plea bargaining—stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions. (See *Hill* v. *Lockhart* (1985) 474 U.S. 52 [88 L.Ed.2d 203, 106 S.Ct. 366]; *McMann* v. *Richardson* (1969) 397 U.S. 759, 771 [25 L.Ed.2d

763, 773-774, 90 S.Ct. 1441]; *In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919].) ▇ It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea. (*Hill* v. *Lockhart, supra,* 474 U.S. at pp. 56-60 [88 L.Ed.2d at pp. 208-211]; *McMann* v. *Richardson, supra,* 397 U.S. at p. 771; *In re Williams, supra,* 1 Cal.3d, at pp. 174-175.) In *Hill* v. *Lockhart, supra,* the United States Supreme Court applied the criteria for assessing ineffective assistance of counsel, set forth in *Strickland* v. *Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674, 104 S.Ct. 2052], to a claim of incompetent advice as to the decision whether to plead guilty. The court held that in order successfully to challenge a guilty plea on the ground of ineffective assistance of counsel, a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial. (474 U.S. at pp. 58-59 [88 L.Ed.2d at pp. 209-210].)

We conclude, as have all federal and state courts presented with this issue,[5] that the converse circumstances—where counsel's ineffective representation results in a defendant's rejection of an offered plea bargain, and in the defendant's decision to proceed to trial—also give rise to a claim of ineffective assistance of counsel. Both alternate decisions—to plead guilty or instead to proceed to trial—are products of the same attorney-client interaction and involve the same professional obligations of counsel. Application of the constitutional guarantee of effective assistance of counsel to the advice given a defendant to plead guilty necessarily encompasses the counterpart of

[5]See, e.g., *Lewandowski* v. *Makel* (6th Cir. 1991) 949 F.2d 884; *U.S.* v. *Rodriguez Rodriguez* (1st Cir. 1991) 929 F.2d 747, 752-753, and footnote 1 (claim of ineffective assistance of counsel in failing to convey a counteroffer to an offered plea bargain, and in providing inadequate advice as to the consequences of rejection of the plea bargain, warrants a hearing); *Turner* v. *State of Tenn.* (6th Cir. 1988) 858 F.2d 1201, 1205-1207 (vacated on other grounds in *Tennessee* v. *Turner* (1989) 492 U.S. 902 [106 L.Ed.2d 559, 109 S.Ct. 3208], and remanded for reconsideration in light of *Alabama* v. *Smith* (1989) 490 U.S. 794 [104 L.Ed.2d 865, 109 S.Ct. 2201]; *Johnson* v. *Duckworth* (7th Cir. 1986) 793 F.2d 898, 902 ("we fully agree . . . that in the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution, and that failure to do so constitutes ineffective assistance of counsel"); *United States* ex rel. *Caruso* v. *Zelinsky* (3d Cir. 1982) 689 F.2d 435, 438 (attorney's failure to communicate plea offer "is a gross deviation from accepted professional standards" and constitutes violation of Sixth Amendment right to counsel); *Beckham* v. *Wainwright* (5th Cir. 1981) 639 F.2d 262; *State* v. *Simmons* (1983) 65 N.C.App. 294 [309 S.E.2d 493, 497-498]; *Com.* v. *Napper* (1978) 254 Pa.Super.Ct. 54 [385 A.2d 521].

One prior California Court of Appeal decision discusses this issue and reaches the same conclusion. (See *People* v. *Brown, supra,* 177 Cal.App.3d 537.)

The parties fail to cite, and our independent research has not revealed, any judicial decision which holds to the contrary—namely, that such circumstances give rise to a claim of ineffective assistance of counsel which is, however, remedied by a fair trial.

that advice: to reject a proffered plea bargain and submit the issue of guilt to the trier of fact.

## III

In the present case, the Court of Appeal concluded as a matter of law that a defendant suffers no prejudice from constitutionally inadequate representation resulting in the decision to reject an offered plea bargain, if the defendant subsequently receives a fair trial on the charges in question. In so holding, the court based its decision on one passage in *Strickland* v. *Washington, supra,* 466 U.S. 668, which states that the purpose of the Sixth Amendment's guarantee of the effective assistance of counsel is to ensure that criminal defendants receive a fair trial. (*Id.,* at p. 684 [80 L.Ed. 2d at p. 691].) In focusing on this statement alone, however, the Court of Appeal adopted an overly narrow reading of *Strickland*'s delineation of the functions of counsel. The court in *Strickland* explained that counsel's responsibilities incident to ensuring a fair trial include "the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." (*Id.,* at p. 688 [80 L.Ed.2d at p. 694].) The *Strickland* court held that the standards of the American Bar Association (such as I ABA Standards for Criminal Justice, The Defense Function, stds. 4-1.1 to 4-8.6 (2d ed. 1980)) provide pertinent guidelines for determining the scope of the duties required of counsel under various circumstances. (466 U.S. at p. 688 [80 L.Ed.2d at p. 694].) Standard 4-6.2 provides that in conducting plea discussions with the prosecutor, defense counsel must communicate promptly to the accused all proposals made by the prosecutor, and ensure that the accused's choice on the question of a guilty plea is an informed one, made "with full awareness of the alternatives, including any that arise from proposals made by the prosecutor." (I ABA Standards for Criminal Justice, *op. cit. supra,* std. 4-6.2(a) & commentary.)

The position taken by the Court of Appeal—that a fair trial remedies the ineffective assistance which had led the defendant to reject an offered plea bargain—disregards petitioner's specific complaint of constitutional injury. Petitioner does not complain that counsel's failing affected his defense at trial but rather that, because of the denial of effective representation at the pretrial stage of the proceeding, he was deprived of the opportunity to *avoid* trial and the ensuing sentencing by entering into an advantageous plea bargain offered by the prosecution.

We recognize that a defendant who pleads guilty as a result of ineffective representation is in a position different from that of a defendant who, as a

result of ineffective representation, rejects the offer of a plea bargain. The defendant who pleads guilty waives the right to a trial and thus relinquishes most of the constitutional safeguards inherent in the judicial process. The defendant who rejects the offer, on the other hand, generally will simply proceed to trial, retaining all of those safeguards.

Were we to adopt the position taken by the Court of Appeal, however, we not only would deny defendants a remedy for the specific constitutional deprivation suffered, but our holding also would seriously undermine the functioning of the plea negotiation process. As noted by one federal court: "To accept or to reject a plea offer presents a binary choice at a fork in the road; providing constitutional protection against an incompetent shove in one direction, but not against an equally incompetent shove in the other, may produce unwanted skewing of the results. Like the character in the short story, criminal defendants facing this choice under asymmetrical constitutional protection may begin to see one alternative as the lady and the other as the tiger." (*Turner* v. *State of Tenn.* (M.D.Tenn. 1987) 664 F.Supp. 1113, 1120, affd. *Turner* v. *State of Tenn.*, *supra*, 858 F.2d 1201.)

Furthermore, a defendant possesses a constitutionally protected right to participate in the making of certain decisions which are fundamental to his or her defense. (*Jones* v. *Barnes* (1983) 463 U.S. 745, 751 [77 L.Ed.2d 987, 993, 103 S.Ct. 3308]; see *Johnson* v. *Duckworth*, *supra*, 793 F.2d 898, 900-901.) The crucial decision to reject a proffered plea bargain and proceed to trial should not be made by a defendant encumbered "with a grave misconception as to the very nature of the proceeding and possible consequences." (*Beckham* v. *Wainwright*, *supra*, 639 F.2d at p. 267.)

For these reasons, we conclude the rendering of ineffective assistance by counsel, resulting in a defendant's decision to reject an offered plea bargain and proceed to trial, constitutes a constitutional violation which is not remedied by a fair trial.

## IV

 We next consider what is required in order to establish a claim of ineffective assistance of counsel in the context of a defendant's rejection of a proffered plea bargain. To demonstrate that a defendant has received constitutionally inadequate representation by counsel, he or she must show that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; *and* (2) counsel's deficient performance subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the

result would have been more favorable to the defendant. (*People* v. *Haskett* (1990) 52 Cal.3d 210, 248 [276 Cal.Rptr. 80, 801 P.2d 323]; see *Strickland* v. *Washington, supra,* 466 U.S. 668, 687-696 [80 L.Ed.2d at pp. 693-699].)

To assist us in deciding whether the first of the two prongs of this test has been established, we turn to the State Bar Rules of Professional Conduct and the American Bar Association's Standards for Criminal Justice, cited *ante,* which provide guidelines for determining the prevailing norms of practice relating to advising a defendant as to the decision whether to reject an offered plea bargain and proceed to trial. Under these guidelines, defense counsel must communicate accurately to a defendant the terms of any offer made by the prosecution, and inform the defendant of the consequences of rejecting it, including the maximum and minimum sentences which may be imposed in the event of a conviction. (I ABA Standards for Criminal Justice, *op. cit. supra,* The Defense Function, std. 4-5.1 & commentary; rule 3-510, Rules of Prof. Conduct of State Bar.)[6] We caution that a defense attorney's simple misjudgment as to the strength of the prosecution's case, the chances of acquittal, or the sentence a defendant is likely to receive upon conviction, among other matters involving the exercise of counsel's judgment, will not, without more, give rise to a claim of ineffective assistance of counsel. (See *McMann* v. *Richardson, supra,* 397 U.S. at pp. 770-771 [25 L.Ed.2d at pp. 772-773]; *Bond,* Plea Bargaining & Guilty Pleas, *op. cit. supra,* § 4.16(a), at p. 4-38.) Such claim "depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases." (*McMann, supra,* 397 U.S. at p. 771 [25 L.Ed.2d at p. 773]; see *Strickland* v. *Washington, supra,* 466 U.S. at p. 689 [80 L.Ed.2d at p. 694].)

The first prong, deficient performance, is established if the record demonstrates that counsel's performance fell below an objective standard of reasonableness under the prevailing norms of practice.

If the first prong is established, the second prong of prejudice must be met in order to demonstrate ineffective representation. To establish prejudice, a defendant must prove there is a reasonable probability that, but for counsel's deficient performance, the defendant would have accepted the proffered plea bargain and that in turn it would have been approved by the trial court.

---

[6]We discourage counsel from making any representations as to the actual period of prison confinement the particular defendant will serve, or is likely to serve, under an indeterminate as opposed to a determinate sentence. It may be appropriate, however, for counsel to share with the defendant accurate information as to (1) the rules and regulations affecting the determination of the minimum and maximum periods of confinement applicable to a particular indeterminate sentence, and (2) the mean or average length of confinement served by prisoners who have received the type of indeterminate sentence in question.

We note the ease with which a defendant, after trial, may claim that he or she received inaccurate information from counsel concerning the consequences of rejecting an offered plea bargain. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ." (*Strickland* v. *Washington, supra,* 466 U.S. at p. 689 [80 L.Ed.2d at p. 694].) Furthermore, such a claim may be difficult or impossible to refute directly. The attorney-client privilege may protect against disclosure of the precise information given a defendant by counsel during the plea negotiation process until the defendant decides to waive that privilege, possibly years later, when claiming he or she was incompetently counseled. At that time, defense counsel's recollection of the communications and advice given the client and the client's response to that advice, if unrecorded, may well have faded or disappeared entirely. Thus, in reviewing such a claim, a court should scrutinize closely whether a defendant has established a reasonable probability that, with effective representation, he or she would have accepted the proffered plea bargain.[7]

In determining whether a defendant, with effective assistance, would have accepted the offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain. In this context, a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims.

---

[7]To discourage such claims in future cases, we encourage the parties to memorialize in some fashion prior to trial (1) the fact that a plea bargain offer was made, and (2) that the defendant was advised of the offer, its precise terms, and the maximum and minimum punishment the defendant would face if the plea bargain offer were accepted or, alternatively, if it were rejected and the case proceeded to trial, and (3) the defendant's response to the plea bargain offer. We recognize that although generally it may be easy to memorialize these matters by reciting on the record the terms of an offered plea bargain and the defendant's response, there may be instances where one or more parties will not want the trial court to be privy to failed plea bargain discussions, especially where a court trial is anticipated. We also note that memorializing plea bargain discussions in this particular manner could be burdensome in high-volume courts were it to be followed as a general practice.

Where the parties have chosen to memorialize the offered plea bargain on the record, subsequent claims of ineffective assistance of counsel in the defendant's decision to reject the offer are likely to fail unless the record establishes that the information provided the defendant, as memorialized, was incomplete or inaccurate. (But see fn. 6, *ante.*)

The court's opinion in *Turner* v. *State of Tenn.*, *supra*, 858 F.2d 1201, illustrates the applicability of the foregoing factors. In *Turner*, the Court of Appeals concluded the defendant had established the requisite prejudice resulting from incompetent advice to reject a proposed plea bargain. In *Turner*, the defendant, charged with felony murder and kidnapping, on the advice of counsel had rejected an offer of a two-year sentence and, following trial, had been convicted and sentenced to imprisonment for life plus forty years. The trial court granted a motion for new trial on the ground the defendant had received ineffective assistance of counsel in being advised to reject the offer of the two-year sentence. Plea negotiations then resumed, but the prosecution refused to reinstate the two-year offer. The defendant petitioned the federal court for a writ of habeas corpus, seeking reinstatement of the offered plea bargain. The district court granted a conditional writ, holding that counsel's advice to reject the offer was incompetent, and that the defendant had been prejudiced by the incompetent advice. (*Turner* v. *State of Tenn.*, *supra*, 664 F.Supp. 1113.)

The Sixth Circuit affirmed. Reviewing the element of prejudice, the court noted initially that the defendant's testimony (that, had his counsel advised him to accept the offer, he would have done so because of his reliance on his counsel's judgment) was subjective, self-serving, and, by itself, insufficient to satisfy the *Strickland* test for prejudice. (*Turner* v. *State of Tenn.*, *supra*, 858 F.2d at p. 1206.) The court further found, however, that objective evidence in the record corroborated the defendant's claim, thus demonstrating there was a reasonable probability that, had counsel provided effective representation, the defendant would have accepted the offer. The court found that, because defendant had responded to the two-year offer by making a one-year counteroffer, there was no merit in the state's argument that defendant's publicly and privately professed belief in his innocence would have led him to refuse under any circumstances to plead guilty. Moreover, the mandatory parole date for a one-year sentence was nine months and, for a two-year sentence, thirteen and one-half months—leaving only a four-and one-half-month difference between the time actually to be served under the offer and that to be served under the counteroffer. Because only a small difference existed between the offer and the counteroffer, the court reasoned that a minor change in counsel's advice might have closed the gap. Finally, the district court, at the hearing on the defendant's habeas corpus petition, had observed that counsel appeared to have good client control. For these reasons, the Sixth Circuit concluded there was objective evidence in the

record to satisfy the *Strickland* requirement of prejudice. (*Id.*, at pp. 1206-1207.)[8]

In *Lloyd* v. *State* (1988) 258 Ga. 645 [373 S.E.2d 1], the defendant, who had been convicted of murder, contended on appeal that she had been denied effective assistance of counsel by her trial counsel's failure to communicate to her a pretrial plea bargain offer under which she would have been permitted to plead guilty to voluntary manslaughter. Counsel admitted having failed to communicate the offer, explained his action was based upon his strong belief that his client ultimately would be acquitted, and implied that had he communicated the offer, he would have recommended that his client reject it.

The Supreme Court of Georgia affirmed the judgment of conviction, concluding that although counsel's failure to communicate the offer to accept a plea of guilty to the lesser offense constituted deficient representation, the evidence failed to establish that the defendant would have accepted (or even considered) the offer to permit her to plead guilty to the lesser charge. Defendant therefore was held to have failed to establish prejudice. (*Lloyd* v. *State, supra,* 373 S.E.2d at p. 3.)

Finally, an additional factor pertinent (although not dispositive) in determining prejudice may be the defendant's stance at trial. For example, a defendant's trial protestations, under oath, of complete innocence may detract from the credibility of a hindsight claim that a rejected plea bargain would have been accepted had a single variable (sentencing advice) been different. ██ ██ The reviewing court in the habeas corpus proceeding may take judicial notice of the trial proceedings, and, depending upon the circumstances of each case, a defendant's trial stance and particular testimony may be viewed as favorable or unfavorable to his or her habeas corpus claim.[9]

 In addition to proving that he or she would have accepted the plea bargain, a defendant also must establish the probability that it would have

---

[8]The Sixth Circuit also upheld the district court's remedy for the Federal Sixth Amendment violation, consisting of reinstatement of the offered plea bargain, or, if the offer were withdrawn, a rebuttable presumption of prosecutorial vindictiveness to attach to any subsequent offer made by the state in excess of the two-year offer. The United States Supreme Court granted certiorari, vacated the judgment rendered by the district court, and remanded the case to the circuit court for further consideration in light of the Supreme Court's then recent opinion in *Alabama* v. *Smith, supra,* 490 U.S. 794. (*Tennessee* v. *Turner, supra,* 492 U.S. 902.) (In *Alabama* v. *Smith, supra,* 490 U.S. at pp. 798-803 [104 L.Ed.2d at pp. 871-875], the high court held that a presumption of judicial vindictiveness does not arise where a second sentence, imposed after trial, is more severe than a first sentence which had been imposed after a guilty plea that subsequently was withdrawn.)

[9]We recognize that an accused's claim of innocence does not preclude entry of a guilty or nolo contendere plea where the court taking the plea ascertains a "factual basis" therefor. (See

been approved by the trial court. ▮ Such a requirement is indispensable to a showing of prejudice because " '[j]udicial approval is an essential condition precedent to any plea bargain' " negotiated by the prosecution and the defense (*People* v. *Stringham* (1988) 206 Cal.App.3d 184, 194 [253 Cal.Rptr. 484]), and a plea bargain is ineffective unless and until it is approved by the court. (*Ibid.*; see *People* v. *Orin* (1975) 13 Cal.3d 937, 942-943 [120 Cal.Rptr. 65, 533 P.2d 193]; §§ 1192.1, 1192.2, 1192.4, 1192.5.)

▮ Petitioner argues that, because trial courts rarely reject proffered plea bargains, we should promulgate a "presumption" that a plea bargain offered by a prosecutor would have been approved when submitted by the parties to the trial court. We reject this suggestion. ▮ In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes. (See *People* v. *Cardoza* (1984) 161 Cal.App.3d 40, 43 [207 Cal.Rptr. 388].) For that reason, a trial court's approval of a proposed plea bargain must represent an informed decision in furtherance of the interests of society (*People* v. *Stringham, supra,* 206 Cal.App.3d at p. 194); as recognized by both the Legislature and the judiciary, the trial court may not arbitrarily abdicate that responsibility. For example, in *People* v. *Orin, supra,* 13 Cal.3d at pages 943-944, we held that the underlying purpose of the statutory requirements governing dismissal of counts under section 1385 was to protect the public interest against "improper or corrupt dismissals," and to impose a purposeful restraint upon the exercise of judicial power. (See also *People* v. *Cardoza, supra,* 161 Cal.App.3d 40, 44 [disclosure requirements of § 1192.6 enable the trial court to make a more informed decision as to whether to approve or reject a proposed plea bargain].)

▮ Thus, although it may well be that in our frequently overcrowded courts, judicial rejection of plea bargains is the exception rather than the general rule, we may not simply *presume,* as petitioner urges, that the trial court automatically would have approved a plea bargain negotiated by the prosecutor and the defense.[10]

---

*North Carolina* v. *Alford* (1970) 400 U.S. 25 [27 L.Ed.2d 162, 91 S.Ct. 160]; *People* v. *McGuire* (1991) 1 Cal.App.4th 281 [1 Cal.Rptr.2d 846] [factual basis inquiry may be satisfied by stipulation of parties that there is a factual basis].)

[10]The Attorney General contends that the plea bargain offered in the present case would have been subject to the restrictions on plea bargaining set forth in section 1192.7, and that

V

■ The remedy for a violation of the constitutional right to effective assistance of counsel "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." (*United States* v. *Morrison* (1981) 449 U.S. 361, 364 [66 L.Ed.2d 564, 564-568, 101 S.Ct. 665].) Most courts, in determining the remedy that should be afforded a defendant who establishes that he or she has been denied effective assistance of counsel with regard to an offered plea bargain, have vacated the judgment of conviction and remanded the case for a new trial (*Hanzelka* v. *State* (Tex.App. 1984) 682 S.W.2d 385, 387; *State* v. *Ludwig* (1985) 124 Wis.2d 600 [369 N.W.2d 722, 728]; *State* v. *Whitfield* (1968) 40 Ill.2d 308 [239 N.E.2d 850, 852]; *State* v. *Simmons, supra,* 309 S.E.2d 493), in some cases recognizing that the remedy of a "new trial" signifies not only a new trial but also a resumption of plea bargaining. (See *Com.* v. *Napper, supra,* 385 A.2d at p. 524; *Lyles* v. *State* (1978) 178 Ind.App. 398 [382 N.E.2d 991, 994].)

Petitioner seeks specific performance of the plea bargain previously offered him, which would have permitted him to plead guilty in exchange for receiving a lesser sentence.

California courts, however, generally disfavor the remedy of specific enforcement of a failed plea bargain when "specifically enforcing the bargain [will limit] the judge's sentencing discretion in light of the development of additional information or changed circumstances between acceptance of the plea and sentencing." (*People* v. *Mancheno* (1982) 32 Cal.3d 855, 861 [187 Cal.Rptr. 441, 654 P.2d 211]; see *People* v. *Calloway* (1981) 29 Cal.3d 666 [175 Cal.Rptr. 596, 631 P.2d 30] [ordering specific performance would prevent the trial court from exercising its sentencing discretion]; *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 13 [136 Cal.Rptr. 409, 559 P.2d 1028]; *People* v. *Johnson* (1974) 10 Cal.3d 868, 873 [112 Cal.Rptr. 556, 519 P.2d 604] [court reluctant to create a right to specific performance of a plea bargain].)

Specific enforcement of a failed plea bargain is not a remedy required by the federal Constitution. (*Mabry* v. *Johnson* (1984) 467 U.S. 504 [81 L.Ed.2d

---

petitioner has the burden of establishing the reasonable probability that the trial court would have determined the plea bargain was not violative of that statute.

Petitioner, contending we may presume the trial court would have made such a determination, has presented statistical data indicating that the great majority of "serious felony" convictions (as defined in § 1192.7, subd. (c)) result from judicially approved pleas of guilty or nolo contendere.

Our refusal to create a presumption of judicial approval of plea bargains applies to plea bargains subject to the proscriptions of section 1192.7, as well as to all other types of plea bargain.

437, 104 S.Ct. 2543].) In *Mabry*, the defendant pleaded guilty to the charges after unsuccessfully seeking to plead guilty to lesser charges—a disposition previously offered (but later withdrawn) by the prosecution. In a subsequent habeas corpus petition seeking to set aside his guilty plea, the defendant sought to enforce the prosecution's initial offer to accept a plea of guilty to the lesser charges. The high court, rejecting his claim, held the federal Constitution does not bar the prosecution from withdrawing an offered plea bargain, even after acceptance by the defendant: "A plea bargain standing alone is . . . a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." (*Id.*, at p. 507 [81 L.Ed.2d at p. 442], fn. omitted.) The court held that, because the withdrawn offer had not induced the guilty plea, and because the guilty plea was in no sense the product of governmental deception, the defendant's inability to enforce the initial offer was "without constitutional significance." (*Id.*, at p. 510 [81 L.Ed.2d at p. 442], fn. omitted; accord *People* v. *Williams* (1988) 45 Cal.3d 1268, 1306-1309 [248 Cal.Rptr. 834, 756 P.2d 221].)

Thus, under the foregoing authorities, where ineffective assistance of counsel causes a defendant to reject the offer of a plea bargain, the remedy of specific enforcement of the plea offer following trial and conviction is neither constitutionally compelled nor consistent with the exercise of the trial court's broad discretion in determining the appropriate sentence for a defendant's criminal conduct.

Moreover, mandatory reinstatement of the prosecution's offer of a plea bargain, although subject to court approval, would be inconsistent with the legitimate exercise of the prosecutorial discretion involved in the negotiation and withdrawal of offered plea bargains. Following a fair trial and conviction, the prosecutor may well view the case in a different perspective and determine that the sentencing contemplated in the pretrial plea offer no longer is consistent with the public interest. Given the changed complexion of the case after trial and conviction, the prosecutor should not be locked into the proposed pretrial disposition, appropriate as it may have been at the time.

Contrary to petitioner's claim, a presumption of prosecutorial vindictiveness ordinarily would not arise from a prosecutor's failure to reinstate an offer. In *Alabama* v. *Smith, supra*, 490 U.S. 794 (see fn. 8, *ante*), the United States Supreme Court held that where a defendant successfully has attacked a judgment which is based upon a plea of guilty, no presumption of vindictiveness arises where the sentence imposed following a trial on remand is greater than the sentence imposed after the guilty plea. The court

reasoned that, in general, following a trial, a sentencing court has before it a clearer picture of a defendant and his or her crime than was available at sentencing following the guilty plea. Thus, there may be a rational basis for the increased punishment, and no reasonable likelihood exists that the greater punishment is the result of vindictiveness. (*Id.*, at pp. 798-803 [104 L.Ed.2d at pp. 871-875].)

The same reasons that led the high court in *Alabama* v. *Smith, supra,* 490 U.S. 294, to reject a presumption of vindictiveness convince us that there is no reasonable basis for creating a presumption of vindictiveness where the prosecution simply refuses after trial and conviction to agree to the same bargain it had offered prior to trial.

We conclude that neither specifically enforcing the offered plea bargain, nor compelling the prosecutor to reinstate the offer, is the appropriate remedy for a constitutional deprivation of the type allegedly suffered by petitioner.

Instead, we hold that the appropriate remedy for ineffective assistance of counsel that has resulted in a defendant's decision to reject an offered plea bargain (and to proceed to trial) is as follows: After the granting of relief by the trial court (on a motion for new trial or in a habeas corpus proceeding) or by an appellate court, the district attorney shall submit the previously offered plea bargain to the trial court for its approval, unless the district attorney within 30 days elects to retry the defendant and resume the plea negotiation process. If the plea bargain is submitted to and approved by the trial court, the judgment shall be modified consistent with the terms of the plea bargain.

We recognize that such a remedy does not return the parties to the status quo ante if the district attorney elects to resume the plea negotiation process or to proceed to trial. Upon resumption of plea negotiations, the prosecution has acquired as substantial bargaining leverage the circumstance of having obtained a conviction of the defendant following a trial. The right to a new trial, however, does not leave the defendant with an "empty" remedy. A defendant is in a better position, in preparing for a new trial following trial and conviction, to evaluate the strengths and weaknesses of both the prosecution's case and the defense's case. Furthermore, such a defendant is restored the bargaining leverage often afforded by the prosecutor's desire to avoid the time and expense of a new trial and the accompanying uncertainty as to the outcome of the proceedings.

## VI

In applying the foregoing principles to the present case, we undertake an independent review of the record (*In re Hochberg* (1970) 2 Cal.3d

870, 876-877 [87 Cal.Rptr. 681, 471 P.2d 1]) to determine whether petitioner has established by a preponderance of substantial, credible evidence (*In re De La Roi* (1945) 27 Cal.2d 354, 365 [164 P.2d 10]) that his counsel's performance was deficient and, if so, that petitioner suffered prejudice.

We need not and do not determine whether petitioner established the first prong, deficient performance, because we conclude, as did the trial court, that even if counsel's performance was deficient, petitioner has failed to sustain his burden on the issue of prejudice. (See *Strickland* v. *Washington*, *supra*, 466 U.S. at p. 697 [80 L.Ed.2d 699] ["[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."]; *In re Fields* (1990) 51 Cal.3d 1063, 1079 [275 Cal.Rptr. 384, 800 P.2d 862].)

Petitioner has failed to establish a reasonable probability that, had he accurately been informed of his potential life sentence and prison confinement for 16 years and 7½ months prior to parole, he would have accepted the plea bargain offered. Petitioner's statement in his most recent declaration that, had he been given adequate advice, he would have accepted the plea offer, is self-serving and thus insufficient in and of itself to establish prejudice. (See *Turner* v. *State of Tenn.*, *supra*, 858 F.2d at p. 1206.)

Furthermore, petitioner's statement is insufficiently corroborated by independent, objective evidence. The substantial disparity between the term of prison confinement actually faced by petitioner and the term allegedly represented to him by his counsel, constitutes *some* corroborating evidence. The declarations of petitioner and his trial counsel, however, and the reasonable inferences drawn therefrom, establish that petitioner's decision to reject the plea offer was motivated primarily by a persistent, strong, and informed hope for exoneration at trial, and that any evaluation of precise sentencing options was secondary in his thinking.

Petitioner suggests in his declaration that a factor supporting his decision to reject the offer was his perception that the magistrate had concerns about the strength of the People's case. He admits he was "encouraged" by his counsel's optimistic assessment of the chance for an outright acquittal at trial, and was strongly influenced by his counsel's advice not to accept the plea offer. He declares that, after a plea bargaining session shortly before trial, he asked his attorney whether the latter thought petitioner should accept the offer. "[His attorney] then said that if he didn't think he could

win, he would advise me like a great Irish uncle to take the plea bargain. After this meeting, I asked my father, who attended the meeting, what he thought I should do. He told me to do as the lawyer advised. . . . [¶] . . . I was further encouraged in this decision by my attorney's optimistic projections that there would be a 70-80% chance of winning the case should we go to trial."

Petitioner's trial counsel declares that petitioner, at all times at the pretrial stage, "adamantly" insisted he was innocent. Furthermore, testifying at trial in his own defense, petitioner maintained under oath his complete innocence, presenting an alibi defense.[11]

Finally, although petitioner states in his original declaration that had he known he faced "an actual 'real time' sentence of at least 16 years in prison prior to parole, I would have attempted to negotiate a 'no contest' plea to the District Attorney's one-count offer . . . ," there is no evidence substantiating that he was prepared to make such a counteroffer or any other counteroffer, or otherwise engage in the plea bargaining process.

Based upon our independent review of the declarations and the trial court proceedings, we conclude that petitioner has failed to establish a credible, independently corroborated prima facie showing of a *reasonable probability* that he would have accepted the plea offer but for his trial counsel's alleged inaccurate advice as to sentencing. For this reason, we conclude petitioner has failed to establish prejudice.[12] Such failure is fatal to his claim that he was deprived of the effective assistance of counsel guaranteed by the federal and California Constitutions.

VII

The judgment of the Court of Appeal denying the petition for writ of habeas corpus is affirmed.

Lucas, C. J., Panelli, J., Arabian, J., and Baxter, J., concurred.

---

[11]We notified the parties prior to oral argument that we would take judicial notice of the trial court proceedings. (Evid. Code, § 452, subd. (d).)

[12]In light of our conclusion, we need not and do not determine whether petitioner sustained his burden of proof as to the additional requisite element of prejudice—namely, whether the trial court would have approved the proposed plea bargain.

**MOSK, J.**—I dissent.

I agree generally with the rules of law that the majority announce in parts II through V of their opinion.[1] I cannot agree, however, with the majority's actual holding in this case (pt. VI), i.e., that the present petitioner has not met his burden of showing it is reasonably probable he would have accepted the prosecution's plea bargain offer if he had been competently represented by counsel. In my view petitioner has made a sufficient showing to warrant, under our settled practice in such cases, an evidentiary hearing to determine the truth of this and a second disputed material issue of fact joined by the pleadings.

I

A brief review of certain principles governing habeas corpus proceedings in an appellate court will be helpful. A petition for habeas corpus must allege, of course, the specific facts on which the petitioner bases his claim for relief. (*In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793].) If the appellate court determines that the petition alleges facts which, if true, entitle the petitioner to relief, it will issue an order to show cause. (*In re Hochberg* (1970) 2 Cal.3d 870, 874, fn. 2 [87 Cal.Rptr. 681, 471 P.2d 1]; accord, *In re Lewallen* (1979) 23 Cal.3d 274, 278, fn. 2 [152 Cal.Rptr. 528, 590 P.2d 383, 100 A.L.R.3d 823].) The return of the order to show cause must, in its turn, "allege facts tending to establish the legality of the petitioner's detention; it is thus analogous to the complaint in civil actions." (*In re Lewallen, supra,* 23 Cal.3d at p. 277, and cases cited.) It is not sufficient for the return merely to make general denials of the allegations of the petition; rather, "the respondent should recite the facts upon which the denial of petitioner's allegations is based, and, where appropriate, should provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed." (*Id.* at p. 278, fn. 2.)

Next, "The traverse, which may incorporate the allegations of the petition, must deny or controvert each material fact or matter alleged in the return or such fact or matter will be deemed admitted; it is therefore analogous to the answer in civil actions." (*In re Lewallen, supra,* 23 Cal.3d at p. 277; accord, *In re Sixto* (1989) 48 Cal.3d 1247, 1252 [259 Cal.Rptr. 491, 774 P.2d 164].) "When the return effectively admits the material factual allegations of the petition and traverse by not disputing them, we may resolve the issue without ordering an evidentiary hearing." (*In re Sixto, supra,* 48 Cal.3d at p.

---

[1]My only reservation is, for the reasons stated below, that I would give far less weight than the majority to the fact that a petitioner seeking relief on the ground here recognized had denied his guilt at trial.

1252, and cases cited.) But when, after all the pleadings are filed, there remain factual questions relating to matters outside the trial record that are both disputed and material—i.e., whose resolution is necessary to the decision whether to grant relief—it is our practice to order an evidentiary hearing on such questions. (See, e.g., *In re Marquez* (1992) 1 Cal.4th 584 [3 Cal.Rptr.2d 727, 822 P.2d 435]; *In re Cordero* (1988) 46 Cal.3d 161 [249 Cal.Rptr. 342, 756 P.2d 1370]; *In re Martin* (1987) 44 Cal.3d 1 [241 Cal.Rptr. 263, 744 P.2d 374]; *People* v. *Ledesma* (1987) 43 Cal.3d 171 [233 Cal.Rptr. 404, 729 P.2d 839]; *In re Hall* (1981) 30 Cal.3d 408 [179 Cal.Rptr. 223, 637 P.2d 690].)

I apply these principles to the pleadings in the case at bar. In his petition for habeas corpus filed in the Court of Appeal, petitioner made the following factual allegations in support of his claim of ineffective assistance of counsel: that the district attorney offered to accept a plea to one count of robbery with a maximum sentencing exposure of five years; that petitioner's counsel informed him such a sentence would result in at least two and one-half years' actual imprisonment; and that counsel further informed him that even if he were convicted of the most serious charge against him (count 5, kidnapping for the purpose of robbery) he would face a maximum sentence of eight years, which after deduction of credits could result in only four years' actual imprisonment. Petitioner further alleged that if counsel had competently researched the law he would have informed petitioner that his true sentencing exposure on count 5 was a life sentence, that he would not even be eligible for parole until he had served at least seven years, and that under California Board of Prison Terms regulations it was unlikely that he would be released until he had served at least sixteen years and seven and one-half months in prison. Finally, petitioner alleged that "Had counsel rendered effective assistance to petitioner by competently advising him of the length of time in prison faced by petitioner, petitioner would have accepted the settlement of the District Attorney." To the petition for habeas corpus were appended two declarations by petitioner (set forth below as appens. A & B) and one declaration each by petitioner's father, mother, wife, trial counsel, and eight practicing criminal defense attorneys in San Diego County.

On the basis of these allegations petitioner contended that his imprisonment was unlawful because he had been denied his right to the effective assistance of counsel, and prayed that the judgment of conviction be vacated on that ground. The Court of Appeal issued an order directing respondent to show cause why the relief prayed for should not be granted.

Respondent thereafter filed a return urging that the petition be denied. Insofar as relevant here, the return generally denied "each and every material

allegation of the petition." The return did not, however, allege new facts to support that general denial. Instead, it appended the same declarations of petitioner, his father, mother, wife, and counsel that petitioner had himself presented, and in effect relied on them to support its assertion that petitioner "has failed to establish that he was given incorrect advice, that he would have pled guilty if he had been correctly advised, that the trial court would have accepted the plea bargain and that his present calculation of a parole date is correct and reliable."

In response, petitioner filed a traverse (here entitled "Denial") in which he incorporated and realleged the facts set out in his petition and declarations, and specifically alleged (1) that his counsel did give him incorrect advice, (2) that he would have accepted the prosecution's plea bargain offer if he had been competently advised, (3) that the trial court would have approved that bargain, and (4) that his calculation of his likely parole date is correct and reliable.

It follows that the second and third of these issues—i.e., whether petitioner would have accepted the plea offer if he had been competently advised and whether the trial court would have approved the bargain—are disputed questions of fact.[2] They are also material: as the majority state, to establish ineffective assistance of counsel a defendant must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and that counsel's deficient performance subjected the defendant to prejudice; and "To establish prejudice, a defendant must prove there is a reasonable probability that, but for counsel's deficient performance, [1] the defendant would have accepted the proffered plea bargain and that in turn [2] it would have been approved by the trial court." (Maj. opn., *ante*, p. 937.) Under the authority cited at the outset, we should therefore order an evidentiary hearing to resolve these two disputed and material issues of fact.

## II

The majority conclude otherwise, primarily because they impose an additional requirement on those who seek habeas corpus relief on the ground of incompetent representation at the plea bargaining stage. To reduce the risk of fabricated claims, the majority declare that "In this context, a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence."

---

[2]As will appear, on this record the first and fourth issues raise no factual disputes.

(Maj. opn., *ante*, p. 938.) I do not object to this requirement in the abstract; I object to the stringent manner in which the majority apply it in the case at bar, a manner that goes far towards nullifying the very constitutional right that the majority now recognize.

Both in his petition and in his second declaration (appen. B) petitioner explicitly alleges that he would have accepted the prosecution's plea bargain offer if his counsel had correctly advised him of his true sentencing exposure. Under the majority's analysis that allegation would be sufficient to raise a disputed and material issue of fact if it were corroborated by independent and objective evidence. The majority concede, as they must, that the "substantial disparity" between petitioner's true sentencing exposure and the term represented to him by counsel constitutes at least "*some*" corroborating evidence of this type. (Maj. opn., *ante*, p. 945.) But the majority find that evidence to be outweighed by an inference that the majority draw from the declarations of petitioner and his counsel, to wit, that petitioner's primary motivation for rejecting the plea offer was his "persistent, strong, and informed hope" of acquittal at trial. (*Id.* at p. 945.) The record simply does not support this inference.

The majority first assert that petitioner "suggests" in his initial declaration that a factor motivating him to reject the prosecution's offer was his perception that the preliminary hearing magistrate had concerns about the strength of the People's case. On the contrary, petitioner does not "suggest" that the magistrate's concerns were any part of his motivation. A fair reading of the declaration shows that its brief reference to the magistrate's reservations (appen. A, par. 3) is merely part of its statement of the factual background of the case, rather than an explanation of what motivated petitioner to do what he did. That motivation—petitioner's misunderstanding of his true sentencing exposure, induced by his counsel's incompetence—is set forth in detail in the ensuing eight paragraphs of the declaration.

The majority next assert that in his declarations petitioner admits he was encouraged by his counsel's opinion that he had a 70 to 80 percent chance of being acquitted. Again, a fair reading of the declarations undermines this inference. Petitioner does not deny that he was encouraged by counsel's opinion of the chance of an acquittal. But what petitioner really says (see appen. A, pars. 7, 8, & 9; appen. B, pars. 1 & 2) is that as long as he was laboring under the mistaken belief, induced by counsel's incompetence, that the difference between the offered plea (two and one-half years' actual time) and his presumed sentencing exposure (four years' actual time) was small, that 70 to 80 percent chance of acquittal was high enough to justify the risk of standing trial; but if counsel had advised him of his true sentencing

exposure (life sentence with the likelihood of serving at least sixteen and two-thirds years), the difference between the plea and the exposure would have been so large that the same chance of acquittal would *not* have been high enough to take the risk of trial. A moment's reflection will show this to be a completely rational way of thinking: a chance of success that is high enough to warrant our taking a modest risk may well not be high enough to warrant our taking a much greater risk; personal investment decisions, for example, are made on this reasoning every day. It follows that the true motivation for petitioner's decision to decline the offer was not counsel's estimate of the chance of acquittal but counsel's incompetence in informing petitioner that his sentencing exposure was four years' actual time instead of more than sixteen.[3]

Next the majority rely on the declaration of petitioner's counsel, in which he states that his client "adamantly" maintained his innocence before trial;[4] the majority also stress the fact that petitioner took the stand and testified he was not guilty of the crimes charged. But there is less here than meets the eye. The majority seem to reason that because petitioner told his lawyer and the jury that he was innocent, we should not believe his present declaration that he would have accepted the prosecution's plea offer if he had been competently advised. The short answer, of course, is that a claim of innocence is not necessarily inconsistent with a plea of guilty. (*North Carolina* v. *Alford* (1970) 400 U.S. 25 [27 L.Ed.2d 162, 91 S.Ct. 160]; *People* v. *Watts* (1977) 67 Cal.App.3d 173, 180 [136 Cal.Rptr. 496] [a defendant "may, in fact, enter a plea of guilty even though he protests his innocence"].)[5]

More important, the majority's reasoning undermines the principles of law they announce earlier in the opinion. After a persuasive analysis in parts II and III of the opinion, the majority correctly conclude that "the rendering of ineffective assistance by counsel, resulting in a defendant's decision to reject

---

[3]The majority twice quote (maj. opn., *ante*, pp. 946, 930) defendant's statement that his counsel told him that if he did not think he could win the case he would advise defendant "like a great Irish uncle" to accept the plea offer. Whatever the meaning of this cryptic simile, it does not become clearer by repetition and adds nothing of substance to the majority's argument.

[4]My confidence in the accuracy of defense counsel's declaration is somewhat impaired by the fact that in that declaration counsel misspells his own client's name no less than 12 times.

[5]It is true that in California a statute requires each court taking a guilty plea to "cause an inquiry to be made of the defendant" in order to "satisfy itself . . . that there is a factual basis for such plea." (Pen. Code, § 1192.5.) But a recent decision—cited by the majority—has construed the statute to mean that the court need not make any "inquiry . . . of the defendant" personally, and may find the requisite "factual basis" not from the defendant's answers to such an inquiry but simply from his counsel's remark, "So stipulated." (*People* v. *McGuire* (1991) 1 Cal.App.4th 281 [1 Cal.Rptr.2d 846].) After that construction, the statute does precious little to "ensure[ ] that the defendant actually committed a crime at least as serious as the one to which he is willing to plead." (*People* v. *Watts, supra,* 67 Cal.App.3d 173, 178.)

an offered plea bargain and proceed to trial, constitutes a constitutional violation which is not remedied by a fair trial." (Maj. opn., *ante* p. 936.) But what the majority give with one hand they take away with the other: under the majority's reasoning in part VI of the opinion, if such a defendant does "proceed to trial" and has the temerity to plead not guilty or, worse yet, to testify he did not commit the crime—and later learns he was incompetently represented at the plea bargaining stage—he will ipso facto have made it difficult if not impossible for him to show he is a victim of such a "constitutional violation which is not remedied by a fair trial." Only a defendant who remains mute or, better yet, confesses in open court, will be able to complain of this constitutional violation. In short, under the majority's reasoning defendants will be forced to give up one constitutional right—the right to put on a defense—in order to vindicate another—the right to competent counsel at the plea bargaining stage. A constitutional right cannot be held hostage in this fashion.

Again the majority draw the wrong inference from the record—here, from the fact that petitioner testified he did not commit the crimes. Yet the superior court judge who heard the petition for habeas corpus filed by petitioner below correctly understood petitioner's true motivation: although recognizing it might be speculation, the judge observed that "were I similarly situated and had I known the true facts, notwithstanding the fact that I protested my innocence, I might have not decided to roll the dice looking at roughly 16 and two-thirds years in state prison if I lose, and I may have been willing to do my two-and-a-half years notwithstanding that I claimed I was not guilty." I cannot put it any better.

Finally, the majority emphasize petitioner's statement in his first declaration (appen. A, par. 9) that if he had known of his true sentencing exposure he "would have attempted to negotiate a 'no contest' plea to the District Attorney's one-count offer." The majority assert, "there is no evidence substantiating that he was prepared to make such a counteroffer or any other counteroffer, or otherwise engage in the plea bargaining process." (Maj. opn., *ante*, p. 946.)

To begin with, in the circumstances of this case a no-contest plea would not have been a "counteroffer" but an acceptance. The Penal Code itself declares that a no-contest plea, which the code denominates a plea of nolo contendere, is the exact equivalent of a guilty plea when, as here, the charge is a felony: "The legal effect of such a [nolo] plea, to a crime punishable as a felony, *shall be the same as that of a plea of guilty for all purposes.*" (Pen. Code, § 1016, subd. 3, italics added.) Thus petitioner's statement that he would have attempted to negotiate a nolo plea "to the District Attorney's

one-count offer," i.e., to one count of robbery, a felony, is the functional equivalent of saying he would have entered a guilty plea to that count. The district attorney presumably knew what the above quoted code section so clearly provides, and would therefore have taken petitioner's proposed nolo plea to his robbery offer as an acceptance of that offer.[6]

Moreover, the majority are disingenuous in complaining there is no "evidence" substantiating that petitioner would have engaged in the plea bargaining process if he had known his true sentencing exposure. Petitioner has presented sworn declarations in which he states he would have accepted the offer, a statement that the superior court judge found to be perfectly plausible in the circumstances. If the majority mean that petitioner must do more—that he must somehow produce testimonial or documentary "evidence" to prove that he would have accepted the offer—then I would oppose such a requirement for several reasons. First, it would be inconsistent with the majority's earlier—and correct—statement of law in part IV of the opinion listing pertinent factors to consider in determining whether a properly counseled defendant would have accepted a plea offer: the fourth of those factors is, "whether the defendant indicated he or she was amenable to negotiating a plea bargain." (Maj. opn., *ante*, p. 938.) There is a world of difference between simply asking whether "the defendant indicated" he or she was amenable to negotiating a plea bargain—which this petitioner certainly did in his petition and his two declarations—and demanding independent "evidence" to prove that fact. Second, the majority fail to cite any authority imposing such a requirement. Third, this lack of authority is not surprising because in most cases, as here, such a requirement would be impossible to meet.[7]

### III

In my view, the record shows credible independent evidence to corroborate petitioner's declarations that he would have accepted the plea offer if he had been competently represented. I shall apply the majority's own test: "In determining whether a defendant, with effective assistance, would have accepted the offer, pertinent factors to be considered include: [1] whether counsel actually and accurately communicated the offer to the defendant; [2]

---

[6]That petitioner intended an acceptance is also shown by his statement a few lines later in the same declaration (appen. A, par. 11) that if his family had known of his true sentencing exposure they would have "supported me in accepting the prosecution's offer . . . ."

[7]Such "evidence" will not be generated, moreover, by the majority's suggested "memorialization" procedure (maj. opn., *ante*, p. 938, fn. 7). Even in cases in which that procedure is followed, it will record only the fact that the prosecution made a plea bargain offer, that defendant was advised of its terms and his sentencing exposure if he accepted or rejected it, and his response thereto. None of these facts is in dispute in the case at bar.

the advice, if any, given by counsel; [3] the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and [4] whether the defendant indicated he or she was amenable to negotiating a plea bargain." (Maj. opn., *ante*, p. 938.) This is not a case in which the first factor is implicated: petitioner does not contend his counsel failed to communicate the prosecution's offer to him. (See, e.g., *Lloyd* v. *State* (1988) 258 Ga. 645 [373 S.E.2d 1].) But it is a case in which the other three factors are each present and support petitioner's position.

First, "the advice . . . given by counsel" was manifestly erroneous. As the majority note, "The Attorney General does not dispute . . . that under the [California Code of Regulations], petitioner faces the possibility he will serve 16 years and 7½ months of prison confinement under his life sentence." (Maj. opn., *ante*, p. 929, fn. 3.) Instead of so advising petitioner, however, his counsel told him that the maximum penalty he faced was eight years and after credits were allowed the net sentence would be only four years. Petitioner's true sentencing exposure was therefore more than *four times* greater than his counsel informed him.

Second, "the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer" was greater still. Under the proposed plea bargain petitioner faced a maximum sentence of five years and actual prison time of two and one-half years; by contrast, the probable consequence of proceeding to trial was a life sentence with the likelihood of serving at least sixteen years, seven and one-half months—a sentence over *six and one-half times* more severe. As the superior court judge wisely noted, "it's pretty clear to me that given the choice as we now know it of five years as being the offer from the prosecution, alternatively going to trial, losing and having to spend 16 and two-thirds years in prison, it seems to me, although I'm not a hundred percent sure, but most people would probably take it."[8]

Third, petitioner clearly "indicated he . . . was amenable to negotiating a plea bargain." Why this is so is explained at length above.

---

[8]Indeed, petitioner could well be imprisoned even longer than 16⅔ years. After seven years (Pen. Code, § 3046) he will merely become "eligible" for parole; prior to that event the Board of Prison Terms (board) will hold a hearing (1) to determine whether he is actually "suitable" for parole, and if so, (2) to set a parole release date. (Pen. Code, § 3041, subd. (a).) If the board finds petitioner parole-suitable at that hearing, it will likely set a release date resulting, on the facts of this case, in a minimum incarceration period of 16⅔ years. (Cal. Code Regs., tit. 15, § 2280 et seq.)

The board may find a prisoner *unsuitable* for parole, however, on a variety of grounds, including the gravity and circumstances of the crime, the personal history and character of the offender, and the offender's record in prison. (Cal. Code Regs., tit. 15, § 2281; see also Pen. Code, § 3041, subd. (b).) In recent years the board has consistently found the vast majority of life prisoners to be unsuitable for parole. (See Bd. of Prison Terms, Ann. Rep. on Life

I conclude that under the majority's own standards petitioner has made a sufficient showing to warrant an evidentiary hearing on the disputed and material issue of whether he would have accepted the plea offer if he had been competently represented.

IV

Because of their holding to the contrary, the majority decline to reach the two remaining matters that petitioner must prove to be entitled to relief. Under my view, of course, these matters need to be addressed, and I now do so.

First, it seems plain that petitioner has sustained his burden of proving that counsel's representation at the plea bargaining stage fell below an objective standard of reasonableness under prevailing norms of practice. We need not order an evidentiary hearing on this issue: it is a mixed question of law and fact, and its factual component is essentially undisputed. It is true that in the return respondent alleges generally that "petitioner failed to establish he was given incorrect advice," while in the traverse petitioner alleges he did establish this element of his claim. But these are primarily conclusions; the crux of the matter is, what did counsel tell petitioner would be the sentence he would face if he were convicted of the most serious charge against him. On that question, the record shows no real disagreement.

In his first declaration petitioner states that counsel told him the maximum sentence he faced was eight years, and with credits that sentence would be reduced to four years' actual time served.[9] Petitioner's declaration is corroborated by the declaration of his father, who participated in a pretrial discussion of the matter with petitioner and his counsel; the declarant states that

Prisoners, July 1, 1989 Through June 30, 1990 (1991) p. 6, hereafter Ann. Rep. [showing parole denial rates of over 80 percent since 1980].) For example, between July 1, 1989, and June 30, 1990—the latest year for which statistics are available—the board conducted 138 suitability hearings for prisoners convicted, like petitioner, of kidnapping for robbery or ransom; of that total the board found 129—or 93.5 percent—to be unsuitable for parole. (*Id.* at p. 16.) Indeed, of the 682 prisoners serving life sentences with possibility of parole for kidnapping for robbery or ransom as of June 30, 1990, only 12—or 1.7 percent—had parole dates. (*Id.* at pp. 14, 46.) Even discounting prisoners who are not yet parole-eligible, the figure is startling.

If the board finds petitioner unsuitable for parole at his initial hearing, he will be entitled to a new suitability hearing at least every two years thereafter. (Pen. Code, § 3041.5.) There is, of course, no assurance that petitioner will ever be found suitable for parole.

[9] Petitioner also states that at the preliminary hearing the prosecutor said he would probably add a charge of kidnapping for the purpose of robbery, "which carried a 'life top.'" Respondent seizes on this statement as evidence that petitioner knew his true sentencing exposure. It is not. Petitioner alleges he did not understand what "life top" meant; and, as will appear, petitioner's counsel states in his own declaration that he informed his client that "life top" meant he must serve seven years before parole (see Pen. Code, § 3046)—not the

counsel said the maximum sentence petitioner would receive was eight years, which could be reduced to four years with credits, and that counsel did not say petitioner faced the prospect of a sentence of sixteen years to life.

More important, in his own declaration petitioner's counsel does not dispute these statements; in particular, he does *not* state that he informed petitioner that his true sentencing exposure would be at least 16⅔ years in custody. Instead, he asserts that "I do not recall informing Mr. Alvarnez [*sic*] of the consequences of a sentence under Penal Code § 209. Mr. Alvarnez [*sic*] was informed that a conviction could lead to a life top sentence, and that a life top sentence translated to terms of actual time of approximately seven (7) years. I cannot, at this time, recall informing Mr. Alvarnez [*sic*] that Penal Code § 209 could bring about a confinement of 16 to 17 years and that he would not be in front of a Parole Board until at least seven years of his sentence had been completed." Indeed, counsel candidly concedes in effect that he did not give petitioner correct information on this crucial question: he states that the complexity of the defense case and petitioner's denial of guilt "perhaps led me to overlook a proper charge with respect to informing Mr. Alvarnez [*sic*] of the potential consequences of a sentence should he be convicted on all counts."

In the return, respondent neither disputes these allegations nor presents any evidence controverting petitioner's declarations on the point. Indeed, as noted above respondent's return takes the unusual step of adopting as its own the declarations submitted by petitioner. By so doing, respondent in effect concedes the truth of the allegations therein that defense counsel did not inform petitioner of his true sentencing exposure. Because of this implied admission, we need not order an evidentiary hearing on the issue but may resolve the matter on the record before us. (*In re Sixto*, *supra*, 48 Cal.3d 1247, 1252.)

Nor need we order such a hearing to determine the relevant standards of practice. As the majority correctly observe, the American Bar Association's Standards for Criminal Justice declare that defense counsel must accurately "inform the defendant of the consequences of rejecting [any plea bargain offer by the prosecution], including the maximum and minimum sentences which may be imposed in the event of a conviction." (Maj. opn., *ante*, p. 937.) To be accurate, of course, that information must take into account not simply California statutory law but also any implementing regulations of the board: as the majority correctly note, in appropriate cases defense counsel should therefore "share with the defendant accurate information as to (1) the

minimum of sixteen and two-thirds years he will likely be required to serve under board regulations.

rules and regulations affecting the determination of the minimum and maximum periods of confinement applicable to a particular indeterminate sentence . . . ." (*Id.* at p. 937, fn. 6.)

In the case at bar it is undisputed that petitioner's counsel did none of the above. Because the representation provided by counsel at the plea bargaining stage did not meet the foregoing standards, it fell below the objective level of reasonableness required under prevailing professional norms. (*People v. Ledesma, supra,* 43 Cal.3d 171, 216.) As the superior court judge succinctly put it, referring to petitioner, "it seems clear to me that this young man got some bad advice."

The second unresolved issue is purely factual, i.e., whether it is reasonably probable that the proffered plea bargain would have been approved by the trial court. Because it is a component of the required showing of prejudice (*People v. Ledesma, supra,* 43 Cal.3d at p. 216), this is undeniably a material issue. It is arguably also a factually disputed issue. In the return, respondent alleges on various grounds that the plea bargain in this case would not have been approved by the trial court. In the traverse petitioner controverts that allegation, asserting that the trial court would have given its approval as a matter of common practice. But petitioner does more: as will appear, he makes a strong showing that such practice would have been followed in the case at bar.

Petitioner relies on *People v. West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409], a leading case in which this court confirmed the legality of plea bargains in general, and particularly bargains accepting a plea of nolo contendere to the charged offense or to any lesser offense reasonably related thereto. The present case was prosecuted in the San Diego Superior Court. To his petition for habeas corpus petitioner appends declarations by eight attorneys who regularly defend criminal cases in that court. Each avers that he or she has negotiated many felony plea bargains with the San Diego District Attorney, and "When the District Attorney has made an offer on any such case which was acceptable to my client, I have never had the District Attorney or the Court reject the plea merely because it was proffered under *People v. West,*" i.e., because it was a plea of nolo contendere rather than guilty. The experience of these eight declarants was amply confirmed, moreover, by the equally experienced superior court judge who heard the petition below.[10] The judge stated, "I think that the *People v. West* plea is commonly taken in this county. And I think the declarations filed by various

---

[10]Prior to his appointment to the bench in 1987, that judge, the Hon. Bernard E. Revak, had served for 22 years as a local prosecutor, including 2 decades as a San Diego deputy district attorney.

defense attorneys and my history in the criminal business for over 25 years indicates to me that since *West* they are almost routinely taken in a trial department or readiness department."

On this record the Court of Appeal held that petitioner has met his burden of showing it is reasonably probable that the trial court would have approved the plea bargain herein: the Court of Appeal reasoned, "We take notice . . . of the well-known practice in superior court of acceptance of reasonable plea bargains, as the plea bargain in this case certainly was . . . ." I am inclined to agree. Nevertheless, out of an excess of caution I would also refer this issue—like the issue whether petitioner would have accepted the plea offer—to the scrutiny of an evidentiary hearing.

If this petitioner's allegations do not entitle him to at least such a hearing, it is difficult to imagine what allegations would be sufficient. In that event the majority's stirring declaration of a constitutional right—a right so fundamental that its denial, say the majority, cannot be remedied by a fair trial—rings hollow indeed. To declare a right that is virtually impossible for anyone to vindicate is at best a sterile intellectual exercise and at worst a cruel hoax. The superior court judge called this case a "tragedy" for petitioner; we should not make it a miscarriage of justice as well.

Kennard, J., concurred.

APPENDIX A

## DECLARATION OF JOHN ALVERNAZ

I, John Alvernaz, declare:

1. I was the defendant in the case of **People** v. **Alvernaz** (Superior Court No. CR 87143).

2. I secured the services of attorney William Milloy to defend me. Prior to the preliminary hearing, the charges I faced were three counts of robbery.

3. Prior to the preliminary hearing I do not recall that there was any plea bargaining. Mr. Milloy put on a defense at the preliminary hearing. At the conclusion of the hearing, the judge, although he found the matter to be "very difficult," bound me over on all of the charges. The court had stated that it had serious reservations about the prosecution's proof, but believed that the People had shown enough to hold me to answer to the Superior Court. However, the court continued my bail at O.R. despite the prosecutor stating that the district attorney would probably add a kidnap for purposes of robbery charge under Penal Code § 209 which carried a "life top."

4. I did not understand at that time nor any other time during the course of the prosecution against me just what a "life top" meant. In fact, I was given misinformation what it meant by my attorney. My attorney told me that if lost on the most serious of counts, the most time I would get would be four years out of eight.

5. When the case proceeded to Superior Court there was a bargaining session held on September 10, 1987. As I was given to understand it by Mr. Milloy, the prosecution offered a plea to one robbery count with a four or five year maximum. The offer was rejected and we proceeded to trial.

6. Shortly after the September 10, 1987 hearing, my father, my attorney (Mr. Milloy) and I held a joint discussion concerning the bargain, the status of the case and what I was facing. As it was explained to me by Mr. Milloy, the prosecution offer of one count with a four or five-year maximum sentence amounted to a "net" sentence of 2 to 2 1/2 years custody (after credits for work-time were applied against the maximum and assuming I received a maximum sentence). I asked Mr. Milloy at this same meeting if he thought I should take this offer. Mr. Milloy then said that if he didn't think he could win, he would advise me like a great Irish uncle to take the plea bargain. After this meeting, I asked my father, who attended the meeting, what he thought I should do. He told me to do as the lawyer advised.

7. When I asked what I would face if I lost the case at trial, I was told that the maximum penalty would be about eight years and with work-time credits deducted, this would amount to a net of about four years.

8. Although at all times I protested my innocence of these charges, given the choice of a plea bargain which amounted to a five-year maximum compared to an eight year maximum after going to trial and losing, the decision was easy for me to make in rejecting such an offer under those terms.

9. I was further encouraged in this decision by my attorney's optimistic projections that there would be a 70-80% chance of winning the case should we go to trial. Had I been aware that losing this case would have meant a statutory minimum nine years to life, and an actual "real time" sentence of at least 16 years in prison prior to parole, I would have attempted to negotiate a "no contest" plea to the District Attorney's one-count offer. I would not have risked losing to prison the bulk of my adult life with a jury trial after having been bound over by the judge at the preliminary hearing.

10. I was not given accurate information about the serious consequences of going to trial and losing by Mr. Milloy or Mr. Lee Haugen, the attorney who joined the defense just prior to trial and after negotiations had concluded. I went to trial believing the worst that would happen to me if I was convicted of all counts would be about four years of actual time on an eight year sentence.

11. I believe that had my family been aware of the extremely serious consequences following a conviction after a jury trial, they would have encouraged and supported me in accepting the prosecution's offer made at Department 8 on September 10, 1987.

I swear under penalty of perjury that the above statement is true an [sic] correct to the best of my knowledge. Dated this 5 day of March, 1990 in San Diego County.

_____/s/_____
JOHN P. ALVERNAZ

APPENDIX B

**AFFIDAVIT OF JOHN P. ALVERNAZ**

I, John P. Alvernaz, swear to the truth of the following:

When my attorney, Mr. Milloy, informed me of the prosecution offer of a plea to one count with a maximum possible sentence of four or five years, he was also informing me of his optimistic projection of winning the case which he said to be 70-80%.

Had Mr. Milloy informed me of the meaning of a life sentence which I now understand to have as a minimum seven years and as a realistic time in custody of fifteen to sixteen years, I would have accepted the bargain. Anyone, I believe, given proper information would have taken the plea bargain given the risks of going to trial and losing the prosecution offer. In this matter, "anyone" includes me.

The reason I hired Mr. Milloy as my defense attorney was because I grew up with his sons and knew him. I was completely dependant [*sic*] upon him for his professional advice throughout the entire matter and I trusted him and paid him to give me complete and accurate information. I had no independent information at the time I rejected the plea bargain of what I was facing, except as Mr. Milloy informed me.

I swear the above is true and correct to the best of my knowledge and make this declaration under penalty of perjury. Dated this 15 day of August 1990 at San Diego County.

<div align="right">

/s/
_____

JOHN P. ALVERNAZ