Filed 1/21/14  P. v. Perry CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DONTAE JAMAR PERRY,<br><br>    Defendant and Appellant.<br>_____<br><br>In re<br><br>    DONTAE JAMAR PERRY<br><br>    on<br><br>    Habeas Corpus. | B239267<br>(Super. Ct. No. YA078780)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT]<br><br><br><br>B249679 |

THE COURT:

It is ordered that the opinion filed herein on December 19, 2013, be modified as follows:

1. On page 4, line 19, the first sentence of the second full paragraph, beginning "On May 4, 2010," the year "2010" is changed to "2011".

2.      On page 4, at the end of the third full paragraph ending with the words "based on the calls," add as footnote 3, the following footnote, which will require renumbering of all subsequent footnotes:

> [3] Although the parties' discussions with the trial court at the pretrial proceedings occurring on May 4 and 25, 2011, are significant to resolution of the issue presented on appeal, transcripts of those hearings were not included in the Reporter's Transcript on appeal. Fortunately, however, the relevant portions of the Reporter's Transcript are attached to the People's opposition to Perry's motion for a new trial, which is included in the Clerk's Transcript and is therefore part of the appellate record.

[There is no change in the judgment.]

Appellant's petition for rehearing is denied.

Filed 12/19/13  P. v. Perry CA2/3 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DONTAE JAMAR PERRY,<br><br>    Defendant and Appellant.<br>_____ | B239267<br><br>(Los Angeles County<br>Super. Ct. No. YA078780) |
| In re<br><br>    DONTAE JAMAR PERRY<br><br>    on<br><br>    Habeas Corpus. | B249679 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven R. Van Sicklen, Judge.  Affirmed.

PETITION for writ of habeas corpus.  Denied.

David L. Annicchiarico, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Dontae Jamar Perry appeals from the judgment entered following a jury trial that resulted in his convictions for inflicting corporal injury on a cohabitant and multiple counts of disobeying a domestic relations court order. The trial court sentenced Perry to 15 years in prison. Perry contends his trial counsel performed ineffectively, leading to the loss of a favorable plea deal, and seeks reversal of the judgment. In his petition for a writ of habeas corpus, which we consider concurrently with his appeal, Perry reiterates his ineffective assistance of counsel argument. Discerning no reversible error, we affirm the judgment and deny the writ petition.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

On December 28, 2009, Perry and Lisa Andrews had been dating for five years and living together in Los Angeles for two years. That evening, the couple became embroiled in an argument that turned physical. Perry punched Andrews in the face several times with his fist, breaking her jaw in two places. He dropped her off at an emergency room, and she underwent surgery. She declined to press charges.

At trial, Andrews testified that she was the aggressor in the incident and Perry had been defending himself. She had inaccurately told sheriff's deputies, a doctor, and a social worker that Perry punched her several times in the face. She explained at trial that she had lied to officials because she was angry at Perry for cheating on her, and did not want to be charged with domestic violence and risk losing her children.

On November 27, 2010, Perry and Andrews argued about finances in the bedroom of Andrews's Palmdale residence. Perry grabbed Andrews by the back of the neck, pushed her face into the bed, and held her down for three to four minutes. Andrews yelled for him to let her go. One of Andrews's children called 911. A deputy sheriff who

2

responded to the call looked through a window and observed Perry holding Andrews down on the bed by her neck, and heard her yelling for him to release her. He arrested Perry.

At trial, Andrews testified that Perry had grabbed the back of her head, but did nothing more during the incident.

On December 2, 2010, the trial court issued a protective order, pursuant to Penal Code section 136.2,[1] prohibiting Perry from contacting Andrews or coming within 100 yards of her during pendency of the prosecution. The order was personally served on Perry. However, between the date the order was issued and April 20, 2011, Perry telephoned Andrews over 800 times. One hundred twenty nine (129) of the calls were completed. During the calls Perry told Andrews that he loved her, talked about getting married, and said only she could save him. Recordings of some of the calls were played for the jury. Andrews testified that she willingly participated in the telephone conversations.

An expert testified that victims of domestic abuse "accommodate to the abuse that they are experiencing in their intimate relationships," often fail to report abuse, return to their abusers, lie for them, protect them, and recant their stories.

2. *Procedure.*

Trial was by jury. Perry was convicted of inflicting corporal injury upon a cohabitant (§ 273.5, subd. (a), count 1), and 10 counts of misdemeanor disobeying a domestic relations court order (§ 273.6, subd. (a), counts 2-11). The jury found true the allegation that Perry had inflicted great bodily injury on Andrews in commission of the corporal injury offense. (§ 12022.7, subd. (e).) In a bifurcated proceeding, the trial court found Perry had suffered a prior robbery conviction. It denied Perry's *Romero* motion[2] and motion for a new trial, and sentenced him to a term of 15 years in prison, configured as follows. On count 1 the court imposed the midterm of three years, doubled pursuant to

---

[1] All further undesignated statutory references are to the Penal Code.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

3

the Three Strikes law to six years. It imposed a consecutive four-year middle term for the great bodily injury enhancement, and five years for the section 667, subdivision (a) serious felony enhancement. It stayed sentence on counts 2 through 11 pursuant to section 654. It imposed a restitution fine, a suspended parole restitution fine, a court security fee, a domestic violence fine, and a criminal conviction assessment. Perry appeals.

## DISCUSSION

*Perry's ineffective assistance of counsel claim lacks merit.*

1. *Additional background information.*

a. *Proceedings below.*

Perry was represented at trial by the Los Angeles County Public Defender's Office. On February 28, 2011, Perry was charged with a single count of inflicting corporal injury upon a cohabitant (§ 273.5, subd. (a)), based on the December 28, 2009 incident. The information also alleged Perry inflicted great bodily injury upon Andrews (§ 12022.7, subd. (e)); had suffered a prior "strike" conviction for robbery (§§ 211, 667, subds. (b)-(i), 1170.12, subds. (a)-(d)); and had served a prison term within the meaning of section 667.5, subdivision (b), for the same robbery. Perry pleaded not guilty and denied the special allegations.

On May 4, 2010, the parties appeared before the court for a pretrial hearing. The prosecutor informed the court and the defense that Perry had made approximately 100 telephone calls to Andrews from jail, and the People intended to use the calls as evidence at trial. The People also planned to "file violations of protective order charges against the defendant," although not on all 100 calls.

On May 25, 2011, the parties appeared for another pretrial hearing. The prosecutor had given defense counsel copies of the recorded jailhouse telephone calls. She notified the court and the defense that the People would amend the information to add 5 to 10 additional misdemeanor charges for disobeying a domestic relations court order, based on the calls.

4

On May 27, 2011, the People made a plea offer of 10 years, which the defense rejected. The prosecutor informed the trial court: "Counsel asked for an offer, and I made an offer today. . . . It's ten years state prison. . . . [¶] And my understanding is he doesn't want to take that offer. So that offer is no longer available." That same day the People filed the amended information alleging the 10 additional misdemeanor counts.

During jury selection, the prosecutor offered a plea deal with a 13-year sentence. Perry rejected this offer.

Trial began on June 13, 2011.

On June 17, 2011, the court granted the prosecutor's motion to amend the information by adding an allegation that the prior robbery conviction, which had already been alleged as a "strike," was also a serious felony within the meaning of section 667, subdivision (a). The following colloquy transpired:

"[Defense counsel]: I would be objecting [to the amendment], even though . . . I know I don't have grounds to object. . . . [¶] But I will state this on the record: that when I was advising my client of his maximum, I did not include that, and I did not tell him about that. And I am being candid about that. [¶] I have been in discussions with [the prosecutor] regarding potential offers on this case, and the last offer that we got over lunchtime was the 13-year offer.

"[The prosecutor]: I renewed the 13-year offer, given where we are.

"[Defense counsel]: Correct. [¶] Mr. Perry is not accepting the 13-year offer, but he would . . . like me to explain the situation to the court because he is stating that if he knew about the potential adding of this five years to his maximum sentence, that he would have taken the ten years before the People added the misdemeanor counts to the information.

"[The Court]: Well, . . . then it wouldn't matter about the five-year prior. It's the misdemeanor counts that were added that apparently has changed his mind, not the five-year prior.

"[Defense counsel]: Mr. Perry is stating that the addition of the five-year prior is changing his mind.

5

"[The Court]: That he would have taken the ten years after the ten counts of the misdemeanors—the restraining order counts—

"[Defense counsel]: Well, . . . after they added the ten counts, the ten years was not on the table. The ten years was the offer before they added the additional ten counts for the protective order. [¶] But he's stating that if he knew that there was the possibility of this five-year being added, then he would have taken that ten-year back before they even added the misdemeanor counts.

"[The Court]: Okay. Well, I mean, there are two realities here, and one is that . . . sometimes there are charging omissions that do get cleaned up either pretrial or during trial. This is one of them. It happens a lot. [¶] And so I'm going to allow the five-year prior amendment . . . ."

The trial court discussed the 13-year offer with the People and queried whether they would accept an 11-year sentence. The prosecutor responded: "No, not at this time. [¶] Because the offer was ten at one point. *He had notice that we knew about the jail calls at the time when the ten existed.* I just hadn't added those charges yet. But there was a potential for several, considering the phone calls. And I only ended up adding ten. [¶] *So he knew that there was a possibility that the state prison offer was going to get much higher, and he still didn't want to take the ten at the time.*" (Italics added.) She added: "My office did consider the fact that . . . . we're adding the five at this point. We did consider that. Which is why I was willing to renew the 13 that I offered in the middle of jury selection, even though we have put[] witnesses on, particularly the children."

b. *Perry's new trial motion.*

After the jury rendered its verdicts, Perry retained new counsel to prepare a new trial motion and represent him at sentencing. Perry contended, inter alia, that his trial counsel had provided ineffective assistance by failing to advise him of the possibility a 667, subdivision (a) enhancement could be added. At the outset of the hearing, the trial court opined: "It's hard to believe that Mr. Perry would have taken anything in view of the fact that I think he was pretty confident his—the victim in this case was going to recant, that that was going to be successful. [¶] I mean, he never indicated he would take

6

anything, as far as I can recall the negotiations. There was ultimately an offer made of ten years."

The prosecutor represented that the 10-year offer had been her idea; there was never a counteroffer from Perry. "[E]ven before the preliminary hearing, he never asked for an offer. After the preliminary hearing, never asked for an offer. And I can understand why after the preliminary hearing he didn't ask for an offer. Ms. Andrews failed to appear at the preliminary hearing. We had to do that preliminary hearing pursuant to Prop[osition] 115. [¶] So at that moment, which we later found out through jail calls, he was successful in getting her not to come to court. And then listening to the rest of the jail calls, it was pretty clear that he was feeling pretty confident about her not coming to court again." The trial court concurred, stating: "That's the feeling I have. [¶] I mean, there was never a counteroffer. 'I'll take seven or I'll take six or anything like that.' You just said, 'No, I'm not interested in the ten years.' [¶] And now the defense is, well, had he known that there was going to be a five-year prior, he would have taken the ten years. It's very hard to believe that." The court also opined: "[I]t's hard for me to believe that [trial counsel] would not have known that the prior [robbery conviction] would not only be a strike, but a five-year prior. That's pretty elementary."

The prosecutor suggested that Perry's trial counsel could testify at the hearing on the new trial motion. Successor defense counsel argued that trial counsel's "testimony isn't particularly relevant to the issue. She doesn't necessarily know what's in Mr. Perry's mind." The hearing on the motion was continued so that trial counsel could be called as a witness.[3]

Perry's trial counsel thereafter testified as follows. Perry had initially sought to have the infliction of corporal injury charge reduced to a misdemeanor. The prosecutor made a ten-year offer to Perry after the defense learned about the jail calls, and before the information was amended to add them. Trial counsel communicated the offer to Perry,

---

[3]     Perry waived his attorney client privilege for purposes of the new trial motion.

who rejected it. On the first day of trial Perry counter offered to plead guilty in exchange for a five-year sentence, but the prosecutor rejected his offer.

After considering the parties' arguments, the trial court denied the motion. It reasoned that the conclusion Perry would have accepted the 10-year deal if he had known about the 667, subdivision (a) prior was speculative. Perry had declined to accept the 10-year deal or attempt to continue negotiations when the misdemeanor counts were added, even though "assuming the worst-case-for-him scenario, that was an additional ten years." The court opined: "I think that basically all his cards were on the victim in this case, who testified as he wanted, to try to recant and make things look good for him, indicating that she started this, this whole thing was self-defense. And that just didn't go over very well."

c. *Perry's petition for a writ of habeas corpus.*

In support of his contention that his counsel was ineffective, Perry has filed a petition for a writ of habeas corpus, which we consider concurrently with his appeal. Attached to the petition is his declaration, which states the following. Prior to trial, defense counsel told Perry the maximum sentence he faced was 14 years. She told him the prosecutor had offered a 10-year plea deal, but advised him not to take it. During jury selection, counsel advised that the prosecutor had offered a sentence of 13 years. Perry turned the offer down because he "was not willing to voluntarily agree to a prison sentence that long," and "preferred to fight the case at trial." When trial began, he asked counsel to see if the prosecutor would agree to a five-year sentence. He hoped that, even if the prosecutor declined the five-year offer, they "could continue to bargain." However, counsel came back with the news that the prosecutor did not think even the 10-year offer was still available. Perry decided to proceed to trial. During trial he learned the prosecutor was adding a section 667, subdivision (a) enhancement. Defense counsel had never told him this was a possibility. Perry avers: "If, at the time of the 10-year offer, [counsel] had told me that I could also be charged with the above enhancement, and that my maximum sentence would be 18 years, I would have instructed her to accept the 10-year offer. Even if she had advised me to go to trial anyway, I would not have agreed. I

8

had been worried about taking the case to trial. If I had known that I could accept a 10-year sentence, when facing 18 years if I lost at trial, I would definitely have accepted the 10 years. I felt okay following [counsel's] advice not to take a 10-year deal when the maximum was 14 years, but I would not have risked a sentence of 18 years, if I could take a 10-year deal." Contrary to the trial court's opinion, he did not go to trial because he was counting on Andrews to testify in his favor. He did not know what she was going to say, and he was worried about losing at trial. He was "genuinely amenable to negotiating a plea bargain of up to 10 years."

2. *Applicable legal principles.*

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. (*Lafler v. Cooper* (2012) __ U.S. __ [132 S.Ct. 1376, 1384] (*Lafler*); *Missouri v. Frye* (2012) __ U.S. __ [132 S.Ct. 1399, 1406-1407] (*Frye*); *In re Alvernaz* (1992) 2 Cal.4th 924, 933 (*Alvernaz*) ["The pleading—and plea bargaining—stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions"]; *In re Vargas* (2000) 83 Cal.App.4th 1125, 1133.)

The familiar *Strickland v. Washington* test applies to claims of ineffective assistance arising in the plea bargaining context. (*Lafler, supra,* 132 S.Ct. at p. 1384; *Frye, supra,* 132 S.Ct. at p. 1405; *Strickland v. Washington* (1984) 466 U.S. 668; *Alvernaz, supra,* 2 Cal.4th at pp. 936-937.) Under *Strickland,* to obtain relief a defendant must show both that counsel's performance fell beneath an objective standard of reasonableness, and that counsel's deficient performance "subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*Alvernaz,* at pp. 936-937; *Lafler,* at p. 1384; *People v. Williams* (2013) 56 Cal.4th 630, 690.) "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." (*Lafler*, at p. 1387.) To establish prejudice under

these circumstances, the defendant must show "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." (*Lafler*, at p. 1385.) A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. (*Strickland v. Washington, supra,* 466 U.S. at p. 694; *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050-1051 [reasonable probability means "a reasonable chance and not merely an abstract possibility"].)

Defense counsel must inform the defendant of the maximum and minimum sentences that may be imposed in the event of a conviction. (*Alvernaz, supra,* 2 Cal.4th at p. 937; *In re Vargas, supra,* 83 Cal.App.4th at p. 1139.) Although the decision to accept or reject a proffered plea bargain is ultimately the defendant's, "it is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea bargain. The defendant can be expected to rely on counsel's independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of trial." (*Alvernaz,* at p. 933; see *People v. McCary* (1985) 166 Cal.App.3d 1, 8 [criminal defense attorneys have a duty to investigate].) "The crucial decision to reject a proffered plea bargain and proceed to trial should not be made by a defendant encumbered 'with a grave misconception as to the very nature of the proceeding and possible consequences.' [Citation.]" (*Alvernaz,* at p. 936.) The defendant bears the burden of demonstrating that counsel's decisions were not informed. (*People v. Vargas* (2001) 91 Cal.App.4th 506, 537-538.) A "defense attorney's simple misjudgment as to the strength of the prosecution's case, the chances of acquittal, or the sentence a defendant is likely to receive upon conviction . . . will not, without more, give rise to a claim of ineffective assistance of counsel." (*Alvernaz,* at p. 937.) In applying the foregoing principles, we independently review the record. (*Id.* at p. 944.)

10

Section 667, subdivision (a)(1), provides for a five-year enhancement for a defendant who is "convicted of a serious felony who previously has been convicted of" serious felonies specified in section 1192.7, subdivision (c). Robbery is one such serious felony. (§§ 667, subd. (a)(4), 1192.7, subd. (c)(19).) A section 667, subdivision (a) enhancement must run consecutively to the term imposed in the present offense. (*People v. Dotson* (1997) 16 Cal.4th 547, 553; § 667, subd. (a)(1).) Once pled and proved, imposition of a section 667, subdivision (a) enhancement is mandatory; the allegation may not be stricken pursuant to section 1385. (§ 1385, subd. (b) ["This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667"]; *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1560-1561; *People v. Wilson* (2002) 95 Cal.App.4th 198, 201; *People v. Turner* (1998) 67 Cal.App.4th 1258, 1269.) A prior conviction of a serious felony may be used both as a strike under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and as the basis for imposition of a section 667, subdivision (a) five-year enhancement. (*People v. Nelson* (1996) 42 Cal.App.4th 131, 136; *People v. Williams* (2004) 34 Cal.4th 397, 400, 404.)

3. *Application here.*

Perry contends that his trial counsel was obliged to alert him that a section 667, subdivision (a) serious felony enhancement could potentially be alleged based on his prior robbery conviction, and her failure to do so caused him to reject the 10-year plea deal. He avers that her purportedly deficient performance constituted ineffective assistance of counsel in violation of the Sixth Amendment, requiring reversal of his convictions.

Preliminarily, we address Perry's assertion that trial counsel "acknowledged that her performance was deficient," stated that she "erroneously failed to advise" Perry of the 667, subdivision (a) enhancement, and "acknowledged, on the record, that she had no tactical reason for failing to inform" him of it. Perry's argument overstates the record. As noted *ante,* when objecting to amendment of the information, counsel said: "I will state this on the record: that when I was advising my client of his maximum, I did not

11

include that, and I did not tell him about that. And I am being candid about that." In our view, this statement was not a "mea culpa," as Perry contends. Counsel simply stated she had not advised Perry of the possibility a section 667, subdivision (a) enhancement could be alleged, neither more nor less. Her statement was not tantamount to an acknowledgement of error or deficient performance, nor did it shed any light on the reason for her action.

Perry urges that the Sixth Amendment requires counsel to inform a defendant of all charges and enhancements to which he is exposed, including those the prosecution has not yet alleged. In his view, it "was incumbent upon counsel to accurately advise appellant as to all foreseeable penalties." Here, addition of the section 667, subdivision (a) enhancement would have added four years to the 14-year maximum calculated by trial counsel.[4] Perry urges that trial counsel was aware the robbery prior existed, given that it had already been charged as a "strike" prior. Counsel should have investigated and determined that the conviction could also have been alleged as a serious felony pursuant to section 667, subdivision (a). Because an information may be amended whenever it is discovered it does not charge all the defendant's priors (§ 969a), counsel should have known the enhancement was always "looming" in the background. As the trial court observed, frequently charging omissions are "cleaned up" during trial. Therefore, it was unreasonable for trial counsel to assume "an as-yet-uncharged" section 667, subdivision

---

[4] Although section 667, subdivision (a) requires a five-year sentence enhancement, imposition of the enhancement here would have increased Perry's potential sentence by only four years more than trial counsel's 14-year estimate. A section 667.5, subdivision (b) prior prison term enhancement had already been alleged, and counsel had included the one-year term for that enhancement in her calculation. Although a defendant may be charged with both a section 667, subdivision (a) serious felony enhancement and a section 667.5 prior prison term enhancement arising from a single conviction, "imposition of punishment for both enhancements will be barred by section 654's restriction on multiple punishment for a single act." (*People v. Cortez* (1992) 6 Cal.App.4th 1202, 1213; *People v. Perez* (2011) 195 Cal.App.4th 801, 805.) Thus, if the section 667, subdivision (a) five-year enhancement had been imposed, the section 667.5, subdivision (b) one-year enhancement could not have been, resulting in a four-year net increase to counsel's 14-year calculation.

12

(a) prior would not be added later. Once pleaded and proved, imposition of a section 667, subdivision (a) enhancement is mandatory, a circumstance that, in Perry's view, made it particularly crucial for counsel to inform him of its potential addition.

In support, Perry cites *Riggs v. Fairman* (C.D.Cal. 2001) 178 F.Supp.2d 1141, affd. 399 F.3d 1179 (9th Cir. 2005), rehg. en banc granted, 430 F.3d 1222 (9th Cir. 2005), appeal dismissed, 2006 WL 6903784 (9th Cir. 2006).) There, the defendant was prosecuted for shoplifting, and the evidence of his guilt was overwhelming. (178 F.Supp.2d at p. 1143.) The information alleged a single strike prior for robbery. However, in the prior case, the defendant had been convicted of *four* counts of robbery; each could have been charged as a separate strike. (*Id.* at pp. 1143-1144.) Defense counsel assumed, without conducting sufficient investigation, that only one robbery count existed and told the defendant his maximum exposure was nine years. (*Id.* at pp. 1144-1145.) The prosecutor offered a plea bargain with a five-year sentence, but defense counsel advised the defendant to wait for a better offer. He followed her advice. (*Ibid.*) A more favorable offer was never made. Instead, the prosecutor eventually realized she could charge multiple strike priors based on the single prior case and amended the information accordingly. When the defendant learned he was facing 25-years-to-life, rather than 9 years, he unsuccessfully sought to recapture the lost plea opportunity. (*Id.* at pp. 1145-1146.) He was ultimately sentenced to 25 years to life. The trial court denied relief, finding defense counsel had performed adequately based on the information available to her at the time. (*Id.* at pp. 1145-1146.) After the defendant's attempts to obtain relief in the California courts were exhausted, he filed a habeas petition in federal district court. *Riggs* concluded the ineffective assistance claim had merit. (*Id.* at pp. 1143, 1147-1148.) Defense counsel should have discovered the existence of the four robbery counts. (*Id.* at pp. 1147-1148.) The consequences of an additional strike allegation were extremely serious, and the information would not have been difficult to ascertain. (*Id.* at p. 1148.) *Riggs* assumed, without explicit analysis, that counsel should have anticipated the possible amendment by the prosecution and informed the defendant. Perry urges that his trial counsel's performance in the instant case was similarly deficient.

13

The People, on the other hand, argue that trial counsel did not perform below an objective standard of reasonableness, because at the time she advised Perry his maximum sentence was 14 years, this advice was correct;[5] the section 667, subdivision (a) enhancement had not been charged. The People argue that it cannot be ineffective assistance to fail to advise a client of a penalty resulting from a potential charge that the prosecution has not alleged. Moreover, although imposition of a section 667, subdivision (a) enhancement is mandatory, in order to have effect it must be alleged and proven. (§ 1170.1, subd. (e); *People v. Mancebo* (2002) 27 Cal.4th 735, 747 ["in addition to the statutory requirements that enhancement provisions be pleaded and proven, a defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes"]; *People v. Haskin* (1992) 4 Cal.App.4th 1434, 1438.) The People argue that whether to allege a section 667, subdivision (a) serious felony enhancement is "discretionary with the prosecution." (See *People v. Roman* (2001) 92 Cal.App.4th 141, 145 ["As a general rule, the selection of criminal charges is a matter subject to prosecutorial discretion"]; *In re Varnell* (2003) 30 Cal.4th 1132, 1141, fn. 6 [section 969 "does not itself articulate a duty to charge prior convictions but simply specifies, once a duty to charge a prior conviction is imposed by some other law, that *all* such priors be charged"].) Therefore, the People posit, "to deem a defense attorney ineffective for failing to anticipate that a prior conviction, known to the prosecution and already alleged [as the basis for a different sentencing provision], might be charged in an additional way would be a novel step." The People question how far such a duty would logically extend: "Should defense counsel also have warned appellant about the maximum sentence possible with the addition of misdemeanors . . . before they were charged? Should counsel have anticipated that the prosecution, having

---

**5**    The high term for infliction of corporal injury on a spouse or cohabitant is four years (§ 273.5, subd. (a)), which would have been doubled pursuant to the Three Strikes law if the prior "strike" allegation was found true. The high term for infliction of great bodily injury under circumstances involving domestic violence is five years. (§ 12022.7, subd. (e)). The section 667.5 prior prison term allegation carried an additional one year term. (§ 667.5, subd. (b).)

14

accused appellant of a single act of causing corporal injury to a cohabitant in December 2009, might also charge the November 2010 battery as a second count?"

In our view, both parties have articulated arguments that have some force. However, we need not determine whether counsel's performance was deficient, because we conclude that Perry has failed to establish prejudice. (See *Alvernaz, supra,* 2 Cal.4th at p. 945 [a court need not determine whether counsel's performance was deficient before examining the prejudice allegedly suffered by the defendant; " 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed' "], quoting *Strickland v. Washington, supra,* 466 U.S. at p. 697.)

"In determining whether a defendant, with effective assistance, would have accepted the offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain." (*Alvernaz, supra,* 2 Cal.4th at p. 938.) A defendant's uncorroborated, self-serving statement is insufficient by itself to meet the defendant's burden of proof. (*Ibid.*) "[I]n reviewing such a claim, a court should scrutinize closely whether a defendant has established a reasonable probability that, with effective representation, he or she would have accepted the proffered plea bargain." (*Ibid*.)

Here, to establish prejudice, Perry must show there is a reasonable probability he would have accepted the 10-year plea deal had he known the People could later amend the information to add the section 667, subdivision (a) enhancement. As explained *ante,* at the time the 10-year deal was offered, addition of the 667, subdivision (a) enhancement would have changed his maximum exposure from 14 years to 18 years. On the record before us, Perry has not established prejudice. When the prosecutor offered the 10-year deal, Perry knew that the People were about to amend the information to add 10 misdemeanor counts for his repeated violations of the protective order. Each count carried a one-year penalty. (§ 273.6, subd. (a).) Thus, addition of the misdemeanor

15

counts increased Perry's potential sentence from 14 years to 24 years. Perry nonetheless turned down the 10-year plea deal, despite the impending 10-year increase in his maximum sentence. If Perry was unwilling to accept the 10-year deal when his maximum sentence was about to increase from 14 to 24 years due to counts that were *certainly* going to be alleged, it is difficult to fathom that he would have accepted it upon learning of a 4-year increase based upon an enhancement that *had not been, and might never be*, charged. Put differently, if he did not want the 10-year deal when his exposure was increasing to 24 years, it is illogical to assume he would have embraced it when there was a mere possibility his maximum exposure might go from 14 to 18 years.

This conclusion is buttressed by the fact that Perry subsequently turned down the People's 13-year offer. After the section 667, subdivision (a) allegation was charged on top of the 10 misdemeanor counts, Perry's maximum sentence increased to 28 years. At that point, the People offered Perry a 13-year term. In turning down the People's 13-year offer, he rejected a plea agreement that would have cut his maximum exposure by more than half, a more favorable ratio than the 10-year term originally offered when his maximum sentence was 14 years.

Perry raises several arguments aimed at undercutting this conclusion. He points out that immediately upon learning the section 667, subdivision (a) enhancement would be charged, he informed the court, through counsel, that he would have taken the 10-year deal had he known the enhancement was a possibility. He posits that "[t]his assertion was credible because of its immediacy." He also points to his declaration offered in support of his habeas petition, in which he avers, inter alia, that counsel advised him not to accept the 10-year deal; if, at the time the 10-year offer was extant, he had known he could be charged with the section 667, subdivision (a) enhancement and might face an 18-year sentence, he would have taken the deal, even if counsel had advised against it; he was worried about going to trial; he did not know how Andrews would testify; and he preferred to "fight the case" rather than accept a 13-year term.

As Perry acknowledges, *Alvernaz* held that "a defendant's self-serving statement––after trial, conviction, and sentence—that with competent advice he or she *would* have

16

accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims." (*Alvernaz, supra,* 2 Cal.4th at p. 938.) Perry urges that the concerns expressed by *Alvernaz* are substantially diminished here, and his statements should be credited, because he informed the court he would have accepted the 10-year deal *before* he was convicted. But this distinction is not persuasive, given that Perry's statements came at a point in trial when he may well have concluded a guilty verdict was probable. By the time the prosecutor moved to add the section 667, subdivision (a) allegation, the jury had already heard the testimony of Andrews, her two sons, her treating physician, the domestic violence expert, and a deputy sheriff. It had also heard the recordings of Perry's jailhouse calls to Andrews. As the prosecutor argued in opposition to the new trial motion, "[B]y that point, he had heard what she said. He was able to see the reaction of the jury, and he was able to see her demeanor and how—well, for him—horribly she came off." The court agreed: "[T]here's no question that both she and her son were not believable witnesses. [¶] . . . I basically made that finding, and I feel that. I watched both of them testify. They were not believable." The reasonable inference is that Perry's desire to revive the 10-year offer was motivated not by the section 667, subdivision (a) enhancement, but instead by his realization trial was not going as he had hoped. In any event, the bulk of Perry's statements in his declaration have not been corroborated by objective evidence, and are therefore insufficient to overcome the rational inference arising from his rejection of the 10-year offer as discussed *ante*. (*Alvernaz*, p. 938.)

Perry contends that the fact he made a five-year counteroffer on the first day of trial—a fact corroborated by his trial counsel—demonstrated he was genuinely amenable to negotiating a plea, one of the factors *Alvernaz* indicated is relevant to the determination of prejudice. He also urges that "[a] simplistic 10/18 versus 13/24 comparison does not take proper account of human behavior and the personal calculus that goes into a decision whether to plead guilty. If appellant had rejected a 10-year offer when he was facing 24 years," a comparison of the sentences "would have force."

17

However, "it cannot be presumed that someone who would plead guilty to 10 years while facing 18 would also plead guilty to 13 years while facing 24." But, as we have explained, Perry *did* reject a 10-year offer when he was facing 24 years. In our view, the timing of his failure to take the 10- or 13-year offers strongly undercuts his arguments.

Finally, Perry avers that a comparison of the maximum he faced as a result of the addition of the misdemeanor charges is not comparable to that he faced when the section 667, subdivision (a) enhancement was added. Unlike the 667, subdivision (a) enhancement, which was mandatory, it was far from certain that a significant sentence would be imposed on the misdemeanor counts. It would have been reasonable for him to believe it was unlikely the court would actually impose a full one-year sentence on each of the misdemeanor counts, given that Andrews was a willing participant in the calls. In fact, the court ultimately stayed sentence on all the misdemeanor counts. But at the time Perry claims he would have taken the 10-year deal, it was equally uncertain whether he would actually face the additional four years arising from the 667, subdivision (a) enhancement, given that that prior had not been, and might not ever be, alleged. Moreover, while Perry might have believed the court was unlikely to impose a full 10-year sentence on each of the 10 misdemeanor charges, he reasonably should have expected the court might impose *some* additional time. The 667, subdivision (a) enhancement would have increased his maximum by only four years, and it was certainly a strong possibility the misdemeanor counts would have added at least this much additional time to his sentence.

In sum, because Perry has failed to establish prejudice, his ineffective assistance claim lacks merit.[6]

---

[6] In light of our conclusion on this point, we do not address whether the trial court would have approved a plea bargain with a 10-year sentence, or whether the prosecutor would have withdrawn it due to intervening circumstances. (See *Lafler, supra,* 132 S.Ct at p. 1385.)

18

DISPOSITION

The judgment is affirmed.  The petition for a writ of habeas corpus is denied.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH,  J.


We concur:


CROSKEY,  Acting P. J.



KITCHING,  J.



19