Filed 6/30/15  P. v. Jones CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

|  |  |
|---|---|
| THE PEOPLE, | C077316 |
| Plaintiff and Respondent, | (Super. Ct. No. SF127860A) |
| v. |  |
| DENNIS JONES, |  |
| Defendant and Appellant. |  |

Defendant Dennis Jones was convicted by a jury of knowingly possessing a stolen vehicle.  In a trial by court, defendant was found to have three prior strike convictions and to have served four separate prior prison terms.  He was sentenced to prison for an aggregate term of six years.

On appeal defendant contends the prosecutor committed several instances of misconduct, the combination of which deprived him of a fair trial.  Defendant also asserts that if we conclude his failure to object to the instances of misconduct forfeits the issue for purposes of appeal, then he received ineffective assistance of counsel.  We conclude that defendant has forfeited the misconduct issues for appellate review and we reject his ineffective assistance of counsel claim.

1

## STATEMENT OF FACTS

**Prosecution's Case**

On April 18, 2014,[1] Margarita Lopez Arredondo (hereafter Lopez), who works at the Cancun Restaurant in Stockton, attended a party at Rubie's Nightclub. Around midnight, Lopez left the party with her boyfriend, Fidel Morales, and sat in her Mercury Mountaineer while he stood outside. As they were talking, a man came up to Morales, demanded "everything" Morales had, and threatened to "beat the crap" out of him. Morales gave the man his cell phone and wallet. The man told Morales to tell Lopez to give him what she had. Lopez saw a second man and gave up her purse. The two men got into a car and drove off. Morales told Lopez that they should go because the men were going to come back. Lopez locked her Mountaineer, got into Morales's car and he drove her home.

The following morning, Lopez went to the parking lot to retrieve her Mountaineer, but it was gone. She then reported the incident to the police.

About 7:15 p.m. on April 21, Officers Mike Sarale and Jason Digiulio were on duty when they were directed to drive to a specified location. There, the officers saw defendant sitting in Lopez's Mountaineer. Defendant got out of the vehicle and was searched. In defendant's front pocket was an envelope that contained two payroll checks for Lopez, her Social Security card, and her Mexican identification card. The Mountaineer's registration form bore Lopez's name. Also found in the Mountaineer was an identification card bearing another person's name, which defendant claimed he had found in a hotel parking lot and knew the person.

That same evening, Lopez went to the location where her Mountaineer had been found. A window was broken, a hammer was on the rear floorboard, and the stereo had

---

[1] Except as otherwise noted, date references are to events that occurred in 2014.

2

been "ripped" out. An officer at the scene returned the stolen items found on defendant to Lopez. Defendant was still at the scene, but Lopez said she had never seen him before. It was stipulated that defendant was not one of the men who took Lopez's Mountaineer.

**Defense Case**

Lynn Jones, defendant's girlfriend, testified they were living together in a hotel when they received a letter from the City of Stockton informing them that they had to move by the end of April because of "violations."

On April 21, in anticipation of moving their possessions to some friends' house, Jones gave defendant $30 to find someone to help them move. Defendant returned later that day with what turned out to be Lopez's Mountaineer, for which he had the keys. After loading their belongings, they drove to the friends' home, but no one was there. They returned to their residence at the hotel about 12:30 p.m. While in the Mountaineer, Jones saw an envelope that contained some checks and she told defendant to be sure to give the checks back to "the people . . . [¶] . . . [¶] . . . that we rented the [Mountaineer] from." She noticed the Mountaineer's broken window, but aside from that, there was nothing about the vehicle that suggested it might have been stolen.

## DISCUSSION

## I

Defendant cites four instances in which he claims the prosecutor engaged in misconduct, three of which involved the prosecutor's cross-examination of defendant's girlfriend, Jones, and the fourth in his argument to the jury.

First, defendant complains that the prosecutor repeatedly questioned Jones regarding the large number of times she had visited defendant while he was in jail, thereby making it "very clear" to the jurors the defendant was in custody.

Second, that the prosecutor repeatedly challenged Jones's credibility by questioning her regarding why she did not tell the police or prosecutor about what she

3

knew prior to trial without having established who had told her not to speak with the police or prosecutor.

Third, that the prosecutor misquoted Jones's testimony, thereby making it appear that defendant had admitted to her that he knew the vehicle was stolen, when in fact she had not so testified.

Fourth, that the prosecutor continued to make reference to the hammer and items found in the Mountaineer to suggest that defendant had a role in the robbery, which was contrary to the stipulation that defendant was not one of the robbers.

"As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion--and on the same ground--the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) Defendant never objected to any of the cited conduct on grounds of prosecutorial misconduct, nor did he request an admonition. Accordingly, the prosecutorial misconduct issues have not been preserved for appeal.

## II

Defendant contends that if we determine that his counsel's failure to object to the prosecutor's alleged misconduct had forfeited the prosecutorial misconduct issue for appeal, which we have done, then he received ineffective assistance of counsel. No ineffectiveness has been shown.

" ' "[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citation.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

4

different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations]" [Citation].' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925.)

As noted by the United States Supreme Court in *Strickland v. Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674], "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course *should* be followed." (*Id.* at p. 697, italics added; cited with approval in *In re Alvernaz* (1992) 2 Cal.4th 924, 945.)  Following the directive of the United States and California Supreme Courts, we address whether defendant has established prejudice because of his counsel's failure to object.

Defendant has expended great effort in his attempt to establish the first prong of an ineffective assistance of counsel argument, namely, that counsel's representation was below that to be expected of reasonably competent counsel.  However, defendant has made no effort whatsoever to establish the existence of the second prong, namely, that in the absence of his counsel's omissions, there is a reasonable probability that a different result would have occurred.  This failure is fatal to defendant's ineffectiveness argument.

Moreover, on this record there is no reasonable likelihood that in the absence of counsel's omissions, the jury would have determined that he did not know the Mountaineer was stolen.  Lopez's Mountaineer was stolen from her by two robbers on the night of April 18.  Defendant, who it was stipulated was not one of the robbers, was caught by the police in Lopez's Mountaineer at 7:15 p.m. on April 21.  He was alone in the vehicle and in his pocket was an envelope which contained two of Lopez's payroll checks, Lopez's Social Security card, and Lopez's Mexican identification card.  Lopez's name was on the Mountaineer's registration.  The back window of the Mountaineer had been broken out, a hammer lay on the floor behind the driver's seat, and the stereo had been ripped out.  An identification card in another person's name was found in the

5

Mountaineer.  Accordingly, there is no reasonable probability that the jury would have reached a different verdict in the absence of counsel's omissions.

## DISPOSITION

The judgment is affirmed.


      BLEASE      , Acting P. J.


We concur:


    NICHOLSON    , J.


    MURRAY    , J.

6