Filed 5/21/26  P. v. Mythong CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B339795 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. NA006238 |
| ROTE MYTHONG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard M. Goul, Judge. Affirmed.

Christopher L. Haberman for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Nancy Lii Ladner, Deputy Attorneys General for Plaintiff and Respondent.

In 1991, a jury convicted 16-year-old Rote Mythong of first degree murder (Pen. Code, § 187, subd. (a))[1] with firearm enhancements (§§ 12022.5, subd. (a), 12022, subd. (a)(1)). He was sentenced to 29 years to life in prison. In 2020, he was paroled from prison and placed in Immigration and Customs Enforcement ("ICE") detention. Because his conviction was an aggravated felony under federal immigration law, an immigration judge ordered Mythong—a lawful permanent resident at the time of his conviction—removed from the United States under the Immigration and Nationality Act (8 U.S.C. § 1101 et seq.) An appeal of his final order of removal is currently pending before the Ninth Circuit Court of Appeals.

On January 17, 2024, more than 30 years after his conviction, Mythong filed a motion to vacate the conviction or sentence pursuant to section 1473.7, subdivision (a)(1), alleging he did not understand the immigration consequences of a murder conviction when he decided to go to trial, and if had he understood, he would have vigorously tried to obtain an immigration-neutral disposition. The trial court denied the motion.

On appeal, Mythong contends that he did not meaningfully understand the immigration consequences of his conviction and that this error was prejudicial. For the reasons stated below, we affirm the order.

---

[1] All further unspecified statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

## I.    Defendant's background and prior criminal history

Mythong is ethnically Laotian and was born in Cambodia in 1974. In Long Beach, California, Mythong joined the "Suicidal Punks," a subset of the "Sons of Samoa" gang, when he was 12 years old. In 1988, when he was 13 years old, he was placed on informal supervision for trespassing. Approximately five months later, in 1989, a petition was filed and the allegation of battery was sustained. Mythong was placed home on probation. Later that year, he was arrested for petty theft and was referred to a work program as an alternative to incarceration. In October 1989, a petition was filed and the allegation of assault with a deadly weapon was sustained. Mythong was ordered to camp community placement. He spent nine months in the camp program and was released on August 26, 1990. Approximately one month after being released from camp, he was arrested for resisting a peace officer. The disposition of that case is unknown.

## II.    Charges

On January 27, 1991, 16-year-old Mythong was arrested for his involvement in the shooting death of John Clary on January 17, 1991. The District Attorney's office filed a petition against Mythong in juvenile court alleging murder (§ 187, subd. (a)). Mythong entered a denial of the charges against him, and the District Attorney filed a motion pursuant to Welfare and Institutions Code section 707, subdivision (c), requesting to transfer the case to a court of criminal jurisdiction (adult criminal court).

On March 13, 1991, Mythong appeared for a hearing on the motion to transfer. In accordance with the probation

department's recommendation that Mythong be found unfit for juvenile court, the juvenile court ordered his case transferred to adult criminal court. During a psychiatric evaluation, Mythong told a psychiatrist that he declined a plea bargain offer for 18 years to life "for something I did not do."

On October 11, 1991, a jury convicted Mythong of first degree murder (§ 187, subd. (a); count 1) with firearm enhancements (§§ 12022.5, subd. (a), 12022, subd. (a)(1)).

The probation department generated a report for the probation and sentencing hearing in July 1991, recommending that Mythong "be committed to state prison for the maximum time possible." The report stated that Mythong's involvement in the present offense was "not an isolated incident, but appears to be a part of an established pattern of anti-social behavior" and found "no question that his actions pose a substantial threat to others." The report further noted that Mythong "has been unable to benefit from prior probation supervision, becoming involved in more serious offenses, finally resulting in the death of another."

After Mythong's conviction, he was evaluated for his amenability for the training and treatment offered by the Youth Authority[2] under Welfare and Institutions Code section 707.2 and was found to be unamenable to treatment. The evaluation considered "the seriousness of the instant offense as well as [Mythong's] history of escalating violence, plus the early onset of delinquent behavior" and "deemed [him] to be intractable." The

---

[2]     As of July 1, 2005, the correctional agency known as the California Youth Authority became known as the Division of Juvenile Facilities, which is within the Department of Corrections and Rehabilitation. (Welf. & Inst. Code, § 1710, subd. (a).)

report noted Mythong denied his role in the murder, did not demonstrate any remorse, appeared fixed into his antisocial value system, and displayed little to no motivation to change his behavior.

As a part of the amenability determination, a psychiatrist wrote a report dated September 16, 1991. The psychiatrist found that Mythong presented a "clear threat to the community," and recommended an "extended period of confinement in a highly structured setting."

The trial court sentenced Mythong to 29 years to life in state prison, consisting of 25 years to life for the murder conviction and the mid-term of four years for the personal use of a firearm enhancement. On August 19, 1993, the judgment was affirmed on appeal.[3]

In 2020, Mythong was paroled from prison and was detained by Immigration and Customs Enforcement ("ICE"). An immigration judge ordered him removed from the United States and judicial review of his removal proceedings is currently pending before the United States Court of Appeals for the Ninth Circuit.

### III.   Section 1473.7 motion

On January 17, 2024, Mythong, through counsel, filed a motion to vacate the conviction or sentence pursuant to section 1473.7, subdivision (a)(1). Mythong argued that his conviction should be vacated because, as a sixteen-year-old, he did not understand or consider the immigration-related consequences of

---

[3]    *People v. Bush and Mythong* (Aug. 19, 1993, B061644) [nonpub. opn.].

5

proceeding to trial. He claimed that if "he had understood that his conviction in this case would have guaranteed his deportation to a country to which [he] had no ties nor memory, he would have done everything in his power to remain in the juvenile system, or, at least, sought to negotiate a plea deal in adult court that would give him a chance to remain in the United States." He argued he would have attempted to negotiate an immigration-safe disposition, such as a guilty plea to voluntary manslaughter. Mythong further averred that if his case had been prosecuted today, it would have been adjudicated in juvenile court.

The District Attorney filed an opposition to Mythong's motion and denied that any prejudicial error occurred. First, the District Attorney noted that Mythong failed to present "any contemporaneous, objective, corroborative evidence showing [he] placed any importance on avoiding deportation in deciding to go to trial." The District Attorney also emphasized there was no evidence that an immigration-safe plea would have been offered or that the court would have accepted such an offer. The District Attorney noted that Mythong was an active gang member charged with murder. He had a lengthy history within the juvenile justice system, which included dispositions of probation, suitable placement, and camp. The District Attorney further argued that Mythong did not present any contemporaneous evidence to substantiate or corroborate his self-serving statement that he would not have proceeded to trial had he known of the immigration consequences of a conviction for murder.

## IV. The superior court's order

On July 25, 2024, the superior court held a hearing on the motion to vacate. After hearing arguments from both parties, the court denied the motion. First, the court found that Mythong was

6

not credible. Specifically, the court noted Mythong testified that in 1991, he was unaware of any immigration consequences for a murder conviction and he was never told by his attorney that there would be immigration consequences. However, in his declaration, Mythong stated, " 'I have no memory of my attorney in juvenile court. I have no memory of being evaluated by a psychologist, social worker, or anyone while I was in juvenile court.' " The court found that there was a "direct conflict" between Mythong's testimony that he was never told about the immigration consequences and his declaration that he had no memory of his court proceedings. Because Mythong contradicted himself, the court found that his testimony was self-serving and unreliable.

Second, the court found Mythong's claim that he would not have gone to trial if he had known the immigration consequences to be speculative, considering at the time of his trial, he proclaimed his innocence and refused to take a plea "for something [he] did not do."

Third, the court found it "highly speculative" that the District Attorney would have offered a disposition that included a guilty plea to a charge that did not carry immigration consequences. As the court stated, "[t]his was a murder. He killed a human being. And there is nothing in the record that indicates that there was any non-deportable offense which he was offered and any non-deportable sentence which he was offered." The court found no indication that Mythong was or would have been offered an opportunity to plead guilty to a charge that did not carry immigration consequences. Ultimately, the court found that Mythong's motion was "based on speculation now, speculation about what he was told back then[,] and speculation

about what he would have done with that information." Accordingly, the court denied the motion to vacate. Mythong timely appealed.

## DISCUSSION

### I.   Section 1473.7

Under section 1473.7, a person who is no longer in criminal custody may move to vacate a conviction on the ground that the conviction was "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).) To establish that a conviction was legally invalid on this ground, a "defendant must first show that he did not meaningfully understand the immigration consequences" of his litigation strategy. (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).) "Next, the defendant must show that his misunderstanding constituted prejudicial error." (*Ibid.*)

Under section 1473.7, a misunderstanding of immigration consequences is prejudicial if there is a "reasonable probability" that, absent the misunderstanding, the defendant would have adopted a different strategy. (*Espinoza, supra*, 14 Cal.5th at p. 319.) Thus, where a defendant accepts a plea bargain, a misunderstanding is prejudicial if " 'the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*Ibid.*) Similarly, where, as here, a defendant "decides to go to trial, loses, and is sentenced, the defendant can establish prejudice" under section 1473.7 "by showing there is a reasonable probability that (1) he or she would have done something

8

differently—that is, would have taken another 'path' [citation]—and (2) the alternate path would have resulted in an immigration-neutral outcome." (*People v. Carrillo* (2024) 101 Cal.App.5th 1, 20 (*Carrillo*).) "A reasonable probability does not mean more likely than not." (*Id.* at p. 19.) Instead, a reasonable probability is "merely a reasonable chance, which is more than an abstract possibility"—that is, a "probability sufficient to undermine confidence in the outcome." (*Ibid.*) In determining whether there was a reasonable probability that a defendant would have adopted a different strategy, courts "weigh all relevant circumstances." (*Espinoza,* at p. 321.) Such circumstances include not only the defendant's ties to the United States, but also "whether alternative, immigration-safe dispositions were available" and, in particular, "whether the defendant would have had reason 'to expect or hope' that a plea deal without immigration consequences 'would or could have been negotiated.' " *(Id.* at pp. 323–324.) As the moving party, the petitioner in a section 1473.7 proceeding bears the burden of proof by a preponderance of the evidence. (§ 1473.7, subd. (f)(1); see also *People v. Vivar* (2021) 11 Cal.5th 510, 534 (*Vivar*).)

## II.    Standard of review

Appeals from section 1473.7 hearings are subject to independent review. (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) Under this standard, " ' "an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law." ' " (*Id.* at pp. 319–320.) We "give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [superior court] heard and observed.' " ' " (*Ibid.*)

9

## III.  Mythong has not established prejudicial error

The trial court found that Mythong was not credible and that his current statements regarding his past lack of understanding of the immigration consequences of a murder conviction were unreliable and self-serving.  We have no reason to dispute the trial court's factual determinations.

Even assuming Mythong established that in 1991 he did not meaningfully understand the immigration consequences of a murder conviction, he has failed to demonstrate, through objective evidence, that "his lack of understanding of immigration consequences prejudiced his decision to go to trial."  (*Carrillo, supra*, 101 Cal.App.5th at p. 22.)  Mythong can demonstrate prejudice by showing "a reasonable probability," that he "would have taken another 'path' [citation] . . . and . . . the alternate path would have resulted in an immigration-neutral outcome."  (*Id.* at pp. 19–20.)  "Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible."  (*Vivar, supra*, 11 Cal.5th at pp. 529–530.)  "Objective evidence" to support a showing of prejudice "includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced."  (*Espinoza, supra*, 14 Cal.5th at p. 321.)

We acknowledge that Mythong had significant ties to the United States at the time of his conviction—he came here as a young child with his family as refugees, he lived in the United States for over a decade, and he had no known remaining familial

10

ties to Cambodia. (*Espinoza, supra*, 14 Cal.5th at p. 323 [noting "a defendant's deep and long-standing ties to the United States are among the totality of circumstances that can support an inference that immigration consequences were of paramount concern at the time of the defendant's guilty plea"].) Nevertheless, we agree with the trial court that Mythong speculated when he testified at the hearing that he might have agreed to plead guilty to an immigration-neutral charge in exchange for a longer sentence than what the District Attorney allegedly offered.

The objective evidence supports that Mythong's primary concern in 1991 was proclaiming his innocence and avoiding prison. Prior to sentencing on his murder conviction, Mythong was assessed to determine whether he was amenable to the treatment offered by the California Youth Authority. He stated that he was not willing to accept a plea bargain with reduced prison time "for something [he] did not do." Mythong's statement from 1991 contradicts his current claim that he would have taken a different path and pleaded guilty, rather than proceeding to trial.

Moreover, we conclude that Mythong failed to present evidence that at the time he chose to go to trial, he "had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar, supra*, 11 Cal.5th at p. 530.) He presented no evidence that the District Attorney would have agreed to adjudicate his case in juvenile court or would have been amenable to an immigration-neutral plea. All evidence indicates that the District Attorney would not have been amenable to either. Mythong's crime was serious and the evidence against him was strong. He had an extensive criminal history,

demonstrating escalating violence and a lack of rehabilitation. He was an active gang member, and as stated in his evaluation, "he appear[ed] to be fairly well fixed into his antisocial value system as he display[ed] little to no motivation to change his faulty thinking process." (*Espinoza, supra*, 14 Cal.5th at p. 323 [noting the factors relevant to whether the prosecutor would offer a plea include "the defendant's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes involved sophistication, the district attorney's charging policies with respect to immigration consequences, and the existence of comparable offenses without immigration consequences"].)

Mythong mentions that the District Attorney's offer prior to trial "involved . . . accepting the murder charge in exchange for a sentence of 18 years to life." He argues that this offer demonstrated "the prosecution's willingness to negotiate." Preliminarily, other than the reference in Mythong's statement to the psychiatrist, there is no evidence that the District Attorney ever extended any offer to him. Assuming the District Attorney offered 18 years to life in exchange for pleading guilty to murder, such an offer does not demonstrate a reasonable probability that the District Attorney would have offered a charge with an immigration-safe disposition. It would instead show the prosecutor's unwillingness to permit anything less than a conviction for murder.

Nor can we simply presume that a trial court would have approved a plea bargain for a lesser charge negotiated between the District Attorney and Mythong. "In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's

12

interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes. [Citation]. For that reason, a trial court's approval of a proposed plea bargain must represent an informed decision in furtherance of the interests of society." (*In re Alvernaz* (1992) 2 Cal.4th 924, 941.)

Mythong's theory appears to be a mere "abstract possibility" of an immigration-safe plea, and not a "probability sufficient to undermine confidence in the outcome." (*Carrillo, supra*, 101 Cal.App.5th at p. 19.) We conclude that Mythong has not provided any evidence, aside from his own speculation, that there was a reasonable probability that the District Attorney would have entertained a plea to any lesser charge.[4]

---

[4] Mythong asserts that "the stage was set for [his] attorney to counteroffer a plea to voluntary manslaughter." We need not determine whether voluntary manslaughter was crime of violence and thus an aggravated felony which would have rendered Mythong removable from the United States under federal immigration law. But we observe that several published and nonpublished Ninth Circuit Court of Appeals decisions indicate that at the time of Mythong's conviction in 1991, voluntary manslaughter under section 192, subdivision (a) was understood to be a crime of violence, though the Ninth Circuit had never directly addressed the issue. (See, e.g., *United States v. Bonilla-Montenegro* (9th Cir. 2003) 331 F.3d 1047, 1052 [finding California conviction for voluntary manslaughter to be a crime of violence within the meaning of sentencing enhancement provision for offense of unlawfully entering or remaining in the United States].)

Moreover, the Ninth Circuit had determined that involuntary manslaughter (§ 192, subd. (b)) was a crime of violence, and therefore an aggravated felony for immigration

## DISPOSITION

We affirm the order.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EDMON, P. J.

ADAMS, J.

---

purposes. (See *United States v. Springfield* (9th Cir. 1987) 829 F.2d 860, 863; *Park v. INS* (9th Cir. 2001) 241 F.3d 1186, 1189.) If *involuntary* manslaughter was considered a crime of violence, it logically follows that *voluntary* manslaughter was also considered a crime of violence for immigration purposes, since voluntary manslaughter is an intentional killing and necessarily involves the use of force. (See § 192, subd. (a).)